**BANK OF NEBRASKA IN LaVISTA, Appellant,**

v.

**UNITED STATES of America, Appellee.**

No. 90–3073.

United States Court of Appeals,
Eighth Circuit.

Submitted June 13, 1991.

Decided Nov. 15, 1991.

Reed Grandgenett, Omaha, Neb., argued, for appellant.

Susan Buechley, Dept. of Justice, Washington, D.C., argued (Gary Allen and Robert Pomerance, on brief), for appellee.

Before MAGILL, Circuit Judge, HEANEY, Senior Circuit Judge, and LARSON,* Senior District Judge.

* The Honorable Earl R. Larson, United States Senior District Judge for the District of Minnesota, sitting by designation.

HEANEY, Senior Circuit Judge.

This case raises a discrete question of law. The Bank of Nebraska at LaVista (Bank) appeals the district court's dismissal of its suit to recover damages under 26 U.S.C. § 7426. The Bank argues that a wrongful levy occurred when, pursuant to a public auction, the IRS issued certificates of sale for two trucks which did not mention that the Bank held liens on the vehicles senior to the tax liens held by the Internal Revenue Service. We agree with the Bank, reverse the decision of the district court, and remand to that court for a determination of damages.

### FACTS

In 1987, the Bank loaned approximately $40,000 to Gordon's Towing, Inc., a now dissolved and insolvent corporation. In return, the Bank gained security interests in two trucks owned by Gordon's Towing. The Bank duly noted and recorded its security interests on the Nebraska certificates of title for the two trucks and held a first lien on each vehicle. Gordon's Towing subsequently became delinquent on several tax obligations, prompting the Internal Revenue Service to seize the two trucks in which the Bank possessed security interests.

On May 5, 1988, the IRS wrote to the Bank to notify it that the IRS intended to sell the trucks by public auction in Omaha on May 18, 1988. Similar notice was given to other concerned parties and to the public generally. Each notice of sale explained:

> Only the right, title and interest of Gordon's Towing, Inc. in and to the property will be offered for sale. If requested, the Internal Revenue Service will furnish information about possible encumbrances, which may be useful in determining the value of the interest being

sold. (See back of this form for further details).

The back of each notice further noted:

The right, title, and interest of the taxpayer (named on the front of this form) in and to the property is offered for sale *subject to any prior valid outstanding mortgages, encumbrances, or other liens in favor of third parties against the taxpayer that are superior to the lien of the United States.*

(emphasis in original). Accompanying each notice were IRS forms listing the Bank's liens on the trucks. Above the listing of the Bank's liens, the form stated, "Some of these encumbrances or interests may be superior to the lien of the United States." Beyond this sentence the form did not rank the respective liens, although the bottom of the form did note:

The Internal Revenue Service does not warrant the correctness or completeness of the above information, and provides the information solely to help the prospective bidders determine the value of the interest being sold. Bidders should, therefore, verify for themselves the validity, priority, and amount of encumbrances against the property offered for sale.

The auction was held as scheduled on May 18, 1988. No Bank representative attended the auction. An Agent Dean represented the IRS. Prior to commencing the auction, Agent Dean orally announced that the Bank possessed a lien on each truck, specified the amount of the Bank's interest, and stated that the successful bidder would be expected to satisfy the Bank's lien. Only one bid was made for each truck; each bid was made by an individual who identified himself as William Kleiman of 2125 North Broad Street, Fremont, Nebraska. With no other bids received, Kleiman was announced as the successful bidder. The IRS accepted Kleiman's cash payment of $5,710.99, and applied it to the tax obligations of Gordon's Towing.[1]

After accepting Kleiman's bid, the IRS issued a certificate of sale to him for each truck. The back of each certificate stated: "This certificate transfers to the purchaser all right, title, and interest of the taxpayer in and to the personal property described." The Bank's interest in the trucks was not mentioned on either certificate of sale, unlike the original certificates of title, which listed the Bank's liens.

Later that day, after Kleiman and a companion drove the two trucks away, Agent Dean telephoned the vice president of the Bank to provide him with Kleiman's name, address, and telephone number. After several unsuccessful attempts at telephoning Kleiman, the Bank mailed a letter to Kleiman at the Fremont address that he had provided to the IRS. Several days later, a William Kauffman called the Bank and told a bank official that he lived at the address Kleiman had provided to the IRS and that the Fremont phone book did not contain a listing for Kleiman. The Bank vice president immediately notified the IRS of this development.

The Bank hired a private investigator to locate Kleiman and/or the two trucks. Agent Dean also attempted to locate the vehicles. Gordon's Towing subsequently defaulted on the Bank loans secured by the liens on the trucks. In October 1988, the Bank obtained a judgment in Nebraska state court against Gordon's Towing and its owner for $34,339.06, but neither the company nor its owner has been able to satisfy the judgment.

In November 1989, the IRS discovered that one truck was titled in the name of a Virginia company and the other in the name of a Florida company. The Virginia title records reveal that Kleiman brought one truck into Virginia in July 1988. Neither the Virginia records nor the certificate of title held by the Virginia company who purchased the truck from Kleiman reflect the Bank's security interest in the truck.

---

1. Before the sale, Dean calculated the minimum bid that the IRS would accept for each truck. She determined this amount by starting with each truck's fair market value, discounting this amount by 20% to reflect the "forced sale value," and then subtracting the Bank's liens on each vehicle. This formula produced minimum bid prices of $472.77 and $5,238.22 for the two trucks, or $5,710.99 total.

Moreover, the president of the Virginia company which owns the truck testified during his deposition that he purchased it from Kleiman without any knowledge of the Bank's security interest.

The other truck was purchased by a Florida company in October 1988, from an individual who purchased the truck from Kleiman in Virginia. The Florida certificate of title did not list the Bank's lien on the vehicle. During his deposition, the president of the company which owns the Florida truck testified that he purchased it without any knowledge of the Bank's security interest. The Bank requested both of the companies to return the trucks or make other compensation arrangements, but both companies refused to comply with the Bank's demand.

Faced with this predicament, the Bank filed this wrongful levy suit against the United States under 26 U.S.C. § 7426 (1988). While the statute clearly provides for a private right of action and a remedy in the case of a wrongful levy, *see* 26 U.S.C. §§ 7426(a) and (b)(2)(C), the statute does not define when a wrongful levy occurs. 26 C.F.R. § 301.7426–1(b)(iv)(d) provides, however, that "a levy is wrongful against a person if ... the levy or sale pursuant to levy will or does effectively destroy or otherwise irreparably injure such person's interest in the property which is senior to the Federal tax lien." The Bank relied on this regulation and urged the district court to find that the Bank was the victim of a wrongful levy.

Following a bench trial, the district court entered judgment for the government. The district court acknowledged that the Bank's interest in the trucks had been destroyed but found that this destruction resulted from Kleiman's fraudulent conduct and not from the levy itself. We do not agree with this holding.

## DISCUSSION

This appeal turns on a question of law, namely an interpretation of the Internal Revenue Code and its derivative regula-

tions. Accordingly, we review the district court's decision de novo.

26 U.S.C. § 7426(a)(1) (1988) provides:

If a levy has been made on property or property has been sold pursuant to a levy, any person (other than the person against whom is assessed the tax out of which such levy arose) who claims an interest in or lien on such property and that such property was wrongfully levied upon may bring a civil action against the United States.

As noted above, section 7426 does not define "wrongful levy." 26 C.F.R. § 301.-7426–1(b)(iv)(d), however, provides that a levy is wrongful if "the levy or sale pursuant to levy will or does effectively destroy or otherwise irreparably injure such person's interest in the property which is senior to the Federal tax lien."

The district court concluded that it was Kleiman's deceit and not the levy that destroyed the Bank's interest in the trucks. This conclusion ignores, or at the least trivializes, the IRS' failure to note the existence of the Bank's liens on the certificates of sale it gave to Kleiman. The IRS' failure to do so was particularly crucial to Kleiman's scheme, because statutory law enables a purchaser at an IRS sale to obtain a new title for a vehicle without producing the original title, which would reflect the existence of any liens. 26 U.S.C. § 6339 (1988) is reproduced verbatim on the back of the certificates of sale. Subsection (a)(5) of this section provides:

If such property consists of a motor vehicle, [the certificate of sale] shall be notice, when received to any public official charged with the registration of title to motor vehicles, of such transfer and shall be authority to such official to record the transfer on his books and records in the same manner as if the certificate of title to such motor vehicle were transferred or assigned by the party holding the same, in lieu of any original or prior certificate, which shall be void, whether canceled or not.

Given this law, the IRS' failure to list the Bank's lien on the certificates of sale it issued to Kleiman played a critical role in

making Kleiman's scheme a success. If the IRS had stated that the Bank possessed a superior lien on the certificates of sale which it passed to Kleiman, he could not have perpetrated his fraud. By not registering the Bank's interest on the certificates of sale it issued, the IRS paved the way for Kleiman to destroy the Bank's interest in the trucks. Thus, the IRS effectively destroyed the Bank's interests in the trucks and therefore was guilty of a wrongful levy as defined by federal regulation § 301.7426–1.

The only relevant case to the issue here comes from the Seventh Circuit. The IRS cites *National Bank & Trust Co. of South Bend v. United States*, 589 F.2d 1298 (7th Cir.1978), in support of the district court's holding. We note, however, that in *National Bank & Trust*, the Seventh Circuit expressly found "that the [South Bend] Bank's interest in the van was [not] in practical effect destroyed by the issuance of a certificate of sale by the IRS." *Id.* at 1304. In making this finding, that court noted that "[t]he van continued to exist as a source of collection after the sale" and that in the state where the van was titled "a bank which complied with the statutory requirements for recording liens has been allowed to recover a vehicle from an innocent subsequent purchaser." *Id.* (citation omitted).[2]

Such a possibility does not exist here. Each of the relevant states, Nebraska, Florida, and Virginia, have adopted section 9–103(2)(d) of the Uniform Commercial Code. *See* Neb.Rev.Stat.U.C.C. § 9–103(2)(d) (Supp.1989); Fla.Stat.Ann. § 679.-103(2)(d) (1990); Va.Code Ann. § 8.9–103(2)(d) (Supp.1991). This U.C.C. section provides:

If goods are brought into this state while a security interest therein is perfected in any manner under the law of the jurisdiction from which the goods are removed and a certificate of title is issued by this state and the certificate does not show that the goods are subject to security interests not shown on the certificate, the security interest is subordinate to the rights of a buyer of the goods who is not in the business of selling goods of that kind to the extent that he gives value and receives delivery of the goods after the issuance of the certificate and without knowledge of the security interest.

U.C.C. § 9–103(2)(d) (1981). Because this exact series of events occurred here, the requirements outlined·by this U.C.C. section and by the laws of the states which have adopted it were satisfied. The interests of the Florida and Virginia buyers in the trucks are thus superior to the Bank's security interest in the vehicles. Therefore, unlike in *National Bank & Trust*, "the Bank's interest in the [trucks] was in practical effect destroyed by the issuance of a certificate of sale by the IRS." *National Bank & Trust Co. of South Bend v. United States*, 589 F.2d at 1304. The government concedes this point, admitting in its brief "that the Bank's security interest in the trucks is impaired *if not extinguished as a practical matter.*" (emphasis added).

## CONCLUSION

We reverse the decision of the district court and remand the case to it for an assessment of damages.

---

**2.** We realize that the Seventh Circuit might have reached the same decision regardless of whether the South Bend bank could recover its interest in the van, *see id.* at 1304 n. 5. We nonetheless find that the emphasis placed by that court on the possibility that the South Bend bank could recoup its interest renders *National Bank & Trust* distinct from the present case. We leave open the question of whether we would agree with the Seventh Circuit if a case similar to *National Bank & Trust* was presented to us. We are concerned, however, that if we were to adopt the distinction between this case and *National Bank & Trust*—that is, if we were to adopt the rule that the determination of a wrongful levy turned on whether there were any possibility that the security holder might be able to collect its interest—anomalous inequities might arise, given the ease with which motor vehicles can be transported through interstate commerce.