**McGINLEY, Lane, et al., Plaintiffs,**

v.

**UNITED STATES of America, Defendant.**

No. 7:CV95–5009.

United States District Court,
D. Nebraska.

Oct. 7, 1996.

Robert S. Harvoy, McGinley, Lane, Mueller, O'Donnell & Reynolds, P.C., Ogallala, NE, for Plaintiffs.

Thomas J. Monaghan, United States Attorney, Robert D. Metcalfe, Trial Attorney, Tax Division, U.S. Department of Justice, Washington, DC, for Defendant.

## MEMORANDUM AND ORDER

KOPF, District Judge.

Pending before me are cross-motions for summary judgment (filings 14 & 18). Plaintiffs, two Nebraska law firms ("Law Firms"), have sued the United States of America. The Law Firms assert that the Internal Revenue Service (IRS) levied upon two stock certificates that were then in the hands of the Clerk of the District Court of Lincoln County, Nebraska, and that the levy violated 26 U.S.C. § 7426. I will grant the government's motion (filing 14), and deny the Law Firms' motion (filing 18).

### I.

I first examine the background of this case, including the claims of the Law Firms. I then state the material undisputed facts.

### A.

The Law Firms claim that they have a right to the stock certificates entitled to priority under the provisions of 26 U.S.C. § 6323(b)(8) although the IRS levied upon the stock and gave notice of the levy before the Law Firms asserted their claimed lien. *See, e.g., State of Nebraska v. Richter,* 764 F.2d 517 (8th Cir.1985) (where attorney holds a lien that is valid under local law, and the lien is for reasonable compensation for obtaining judgment or procuring settlement, the attorney's lien is entitled to priority under 26 U.S.C. § 6323(b)(8)).

The Law Firms make three alternative arguments: (1) they have a perfected state statutory attorneys' lien on the stock certificates pursuant to Neb.Rev.Stat. § 7–108 (Michie 1995) which has a priority under section 6323(b)(8); (2) they have a perfected state common law attorneys' lien pursuant to the so-called "common fund" doctrine that has a priority under section 6323(b)(8); and (3) they have a state contractual right to the stock certificates that has a priority under section 6323(b)(8). (Pretrial Conference Order ¶ E.)

Section 6323(b)(8) provides that a lien asserted by the IRS under 26 U.S.C. § 6321 (as here) is not valid against an attorney, though the IRS filed prior notice of the government lien, under the following circumstances:

> **Attorneys' liens.**—With respect to a judgment or other amount in settlement of a claim or of a cause of action, as against an attorney who, under local law, holds a lien upon or a contract enforceable against such judgment or amount, to the extent of his reasonable compensation for obtaining such judgment or procuring such settlement, except that this paragraph shall not

apply to any judgment or amount in settlement of a claim or of a cause of action against the United States to the extent that the United States offsets such judgment or amount against any liability of the taxpayer to the United States.

The parties agree that there are no material facts in dispute. I too agree that there is no such dispute.

I find and conclude that (1) the government is undisputably entitled to the stock certificates unless section 6323(b)(8) affords the Law Firms a priority; (2) the stock certificates are not a "judgment," a "settlement" or the product or proceeds of a "judgment" or "settlement" within the meaning of section 6323(b)(8); and (3) since section 6323(b)(8) is inapplicable, it follows that the government must prevail.

## B.

Derived from the uncontroverted facts set forth in the pretrial conference order (filing 27) and the evidentiary submissions (filings 1 (attachments to complaint), 15, 19 and 21) the undisputed material facts are these:

1. The Law Firms entered into a contingency fee contract with P. Wyman Shepherd (Shepherd) on August 10, 1993, to represent Shepherd in an action styled *Nebraska Nutrients, Inc., a Nebraska Corporation, et al. v. Wyman Shepherd, et al.*, Case Number 109–249 in the District Court of Lincoln County, Nebraska ("*Nebraska Nutrients*").

2. One of the plaintiffs in *Nebraska Nutrients* was Raymond Clayton Roles ("Roles"). He sought declaratory relief establishing, among other things, that he was the sole shareholder of the corporation known as Nebraska Nutrients, Inc. Nebraska Nutrients, Inc., was formed as a part of a business venture concerning the development of an ethanol plant. Roles claimed that Shepherd and Leo Corbet ("Corbet"), who, with Roles, had formed Nebraska Nutrients, Inc., released their interests in the corporation pursuant to an agreement dated February 25, 1991. Roles filed his petition for

declaratory judgment in *Nebraska Nutrients* on July 15, 1993.

3. The contingency fee agreement between Shepherd and the Law Firms[1] stipulated that the Law Firms would provide legal services necessary "to the settlement or prosecution of all claims which [Shepherd] has or may have against Ray Roles for wages, compensation, profits, stock or other consideration for services rendered in connection with the conception, financing, construction, supervision, and operation of an ethanol plant." The agreement further provided that the Law Firms would be paid various percentages of the "gross amount collected or recovered," depending upon when such recovery or collection occurred. The agreement further stipulated that "attorneys' fees will be payable only out of recovery, and if no recovery is obtained, no fees shall be payable."

4. It is stipulated that Shepherd is indebted to the United States for unpaid federal income taxes, penalties and interest for the 1982 tax year. In 1986 the IRS assessed income tax deficiencies against Shepherd in the amounts of $129,957.36 (on January 28, 1986) and $36,077.72 (on December 8, 1986), and it is stipulated that these deficiency determinations are valid for the purposes of this suit.

5. On August 27, 1993, the IRS filed with the register of deeds a notice of a federal tax lien against Shepherd. The IRS also sent Shepherd a final notice of intent to levy on October 23, 1993, with respect to his 1982 unpaid taxes.

6. On February 4, 1994, the District Court for Lincoln County, Nebraska, entered a "Journal Entry and Interlocutory Decision" in *Nebraska Nutrients*. This document reflected the following:

a. the case involved multiple issues;

b. trial on one issue had been completed, with Shepherd being represented by the Law Firms;

---

1. The agreement was signed by one of the two Law Firms. The agreement provided that the retained firm could hire additional firms, and that evidently is what happened as two firms comprise the Plaintiffs.

c. the trial issue was whether Roles had obtained the agreement of February 25, 1991, by fraud;

d. the court found that Roles had obtained the agreement of February 25, 1991, by fraud, and that Shepherd and Corbet should·be restored to all "rights, duties, and obligations under Exhibit No. 60 which is the agreement between the parties dated November 1, 1990";

e. the decision was explicitly labeled as "interlocutory in nature and not subject to appeal" because "legal issues may remain for further trial";

f. the decision did not declare what, if any, rights Shepherd had to stock in the corporation generally or to specific stock certificates in particular.

7. Two stock certificates in the name of Shepherd had been deposited with the Clerk of the District Court of Lincoln County, Nebraska. One stock certificate, for one share, was purportedly issued by Shepherd acting as President of Nebraska Nutrients, Inc., and it was dated July 14, 1993. The other stock certificate, for one share of stock, was issued by Shepherd acting as President of Tri–State Construction & Supply, Inc., and was dated July 14, 1993. The "interlocutory decision" described Tri–State Construction & Supply, Inc., as a corporation formed to build the ethanol plant and to shield Nebraska Nutrients, Inc., from construction liability. As previously noted, the "interlocutory decision" did not declare the rights and obligations of the litigants regarding these or any other stock certificates. The Law Firms admit that "trial is still. needed on several issues ... including whether the stock which the Internal Revenue Service is trying to levy was ever validly issued."

8. An appeal from the "interlocutory decision" was perfected to the Nebraska Supreme Court by Shepherd and Corbet, but that court ruled the appeal was premature and remanded the case for further proceedings.

9. On February 23, 1994, the IRS levied upon the stock certificates in the hands of the Clerk of the District Court of Lincoln County, Nebraska, by serving the appropriate notice and levy forms, and they mailed copies to Shepherd.

10. On March 8, 1994, the Law Firms filed their "Attorney's Lien" with the Clerk of the District Court of Lincoln County, Nebraska, asserting a lien under the provisions of Neb.Rev.Stat. § 7–108 (Michie 1995).

11. On January 9, 1995, the District Court for Lincoln County, Nebraska, entered an order directing the clerk to turn over the two stock certificates to the IRS on January 20, 1995.[2]

12. The stock certificates are currently in a safe deposit box at a local bank and the signature of both the Clerk of the District Court of Lincoln County, Nebraska, and an IRS agent are required to obtain access to the box.

## II.

I must state the law applicable to this case, and then apply that law to the undisputed material facts of this case: I turn to those twin tasks.

### A.

Eight principles of law govern this case.

First, the government has a lien on property of a taxpayer for unpaid taxes. 26 U.S.C. §§ 6321, 6322.

Second, the government has a variety of avenues it may pursue to collect unpaid taxes, including, as it has done here, the issuance of an administrative levy upon the taxpayer's property followed by a later sale of that property after seizure. 26 U.S.C. §§ 6331, 6335.

■ Third, a person, other than the taxpayer, whom an IRS levy has aggrieved may attack the levy in federal court on the grounds that the levy was wrongful. 26 U.S.C. §§ 7426(a)(1), (b)(1), & (b)(2).

Fourth, a levy is wrongful when, among other possibilities, the levy "will or does effectively destroy or otherwise irreparably in-

---

**2.** Regarding seizure of property being held by a court, the Nebraska court's turn-over order satisfied the regulatory requirement. See 26 C.F.R. § 301.6331–1(a)(3).

jure such person's interest in the property *which is senior to the Federal tax lien.*" 26 C.F.R. § 301.7426–1(b). *See Bank of Nebraska in LaVista v. United States,* 949 F.2d 262, 264 (8th Cir.1991) (the levy of the IRS was wrongful when it sold trucks pursuant to a tax lien without noting that the trucks were subject to a senior lien held by bank).

■ Fifth, in a wrongful levy action the plaintiff bears the burden to prove that (1) the plaintiff has an interest in the property that the IRS has seized and (2) the government's levy was wrongful (such as by proving that the seized property was subject to a senior lien held by the plaintiff). *Security Counselors, Inc. v. United States,* 860 F.2d 867, 869 (8th Cir.1988) (in a suit by debtor of taxpayer challenging the seizure of escrowed funds, the court determined that the seizure was not wrongful because the government had no obligation to give debtor prior notice and demand for payment of the taxpayer's federal income tax obligation as the IRS was only statutorily required to give third-party debtor notice of the levy itself).

■ While the plaintiff bears the burden of proof, the government bears the initial burden of persuasion to establish "that the property seized be that of the taxpayer." *Id.* This is a sensible allocation of the burden because if the property did not belong to the taxpayer, the seizure would by definition be wrongful and the government is in the best position initially to come forward with evidence that there is a nexus between the taxpayer and the seized property. Nevertheless, if the plaintiff challenges the government's evidence that the seized property belonged to the taxpayer, the plaintiff has the ultimate burden of proof to establish that the property did not belong to the taxpayer. *Id.* at 870.

■ Sixth, pursuant to the Internal Revenue Code, once the IRS makes an assessment that tax is due from a taxpayer, a lien is created in favor of the IRS without any particular filing requirement. *United States v. McDermott,* 507 U.S. 447, 448, 113 S.Ct. 1526, 1527, 1531, 123 L.Ed.2d 128 (1993) (upon assessment by the government "the law created a lien in favor of the United States on all real and personal property belonging to the [taxpayers], 26 U.S.C. §§ 6321 and 6322, including after-acquired property"). Thus, the doctrine of "first in time" rather than the doctrine of "first to record" normally governs cases involving federal tax liens; that is, the *"general rule* is that the tax collector prevails even if he has not recorded *at all."* *Id.* at 454, 113 S.Ct. at 1531 (emphasis in original).

Seventh, Congress has seen fit to afford certain creditors of delinquent taxpayers priorities over federal tax liens by enacting section 26 U.S.C. § 6323. *Id.* at 448, 113 S.Ct. at 1528 (discussing section 6323(a) which grants a priority to holders of judgment liens "until notice" of the tax lien is filed.)

Eighth, as previously noted, section 6323(b)(8) provides that a filed federal tax lien "shall not be valid" "[w]ith respect to a judgment or other amount in settlement of a claim or of a cause of action" *if* a lawyer holds a "lien upon or a contract enforceable against such judgment or [settlement] amount, to the extent of his reasonable compensation for obtaining such judgment or procuring such settlement."

■ Thus, there are three elements to a section 6323(b)(8) priority: (1) the subject of the seizure must be a "judgment or other amount in settlement"; (2) a lawyer must hold "a lien upon or contract enforceable against" the judgment or settlement; and (3) the lawyer must have "obtain[ed] such judgment or procur[ed] such settlement."

### B.

I now apply the foregoing legal principles to the undisputed material facts.

### 1.

Before I can address the primary issue before the court, I should clarify certain preliminary matters. I do that next.

I find and conclude that the court has subject matter jurisdiction over this case. The government agrees that this court has subject matter jurisdiction under the provisions of 26 U.S.C. §§ 7426(a)(1), (b)(1), and (b)(2).

■ Next, the government has established a nexus between the taxpayer and the property seized such that it may be concluded that the property belongs to the taxpayer Shepherd. It is undisputed that Shepherd owes the government unpaid taxes for 1982. It is also undisputed that the stock certificates purport to have been issued by Shepherd as president of the respective corporations to Shepherd personally. As a result, the government has satisfied the initial burden of persuading me that it seized property belonging to a delinquent taxpayer. *Security Counselors, Inc. v. United States*, 860 F.2d at 869. The Law Firms do not contest such a finding and conclusion.

Still further, given the fact that whatever rights the Law Firms assert to the stock arose no earlier than August 10, 1993 (the date the fee agreement was signed) (Pt. I.B.1, *supra* ), the assessment of unpaid taxes in 1986 by the IRS (Pt. I.B.4, *supra* ) establishes that the government's lien is "senior" to the claims of the Law Firms *unless* section 6323(b)(8) grants the lawyers priority. *United States v. McDermott*, 507 U.S. at 448, 454, 113 S.Ct. at 1527, 1531; 26 U.S.C. §§ 6321, 6322.

### 2.

■ Given these preliminaries, it is evident then that the primary legal dispute here is whether section 6323(b)(8) applies.

As earlier noted, from the plain words of the statute there are three elements to proving a section 6323(b)(8) priority, and the first is that the subject of the seizure must be a "judgment or other amount in settlement." While the Law Firms spend most of their brief arguing about why they have a state statutory lien, a state common law lien, or a state contract interest in the stock certificates, they overlook this first prerequisite to entitlement to the protection of section 6323(b)(8).

The Law Firms must prove that the stock certificates are equivalent to a "judgment or other amount in settlement" because section 6323(b)(8) applies only "[w]ith respect to a judgment or other amount in settlement." Consequently, if the stock certificates at issue are not the equivalent of a "judgment or other amount in settlement," then section 6323(b)(8) is inapplicable linguistically, and the Law Firms fail in their burden of proof. *See, e.g., Guziak v. Guziak,* 609 F.Supp. 65, 71 (W.D.Wis.1985) (section 6323(b)(8) did not apply to funds deposited by former husband with the wife's law firm pending divorce settlement because no settlement was ever made).

Initially, the Law Firms do not claim that the stock certificates are the product or proceeds of any "settlement." The Law Firms' claim of priority under section 6323(b)(8) is therefore dependent upon whether the stock certificates are the product or proceeds (the equivalent) of a "judgment."[3] For three reasons, I am convinced that the stock certificates cannot fairly be equated with a "judgment" under section 6323(b)(8).

First, an examination of the stock certificates establishes that Shepherd as president issued them to himself individually before any court decision. So there is no basis upon which to conclude that the stock certificates represent the product or proceeds of a judicial act, that is, a judgment.

Second, the "interlocutory decision" does not purport to create or adjudicate rights to the stock certificates. The "interlocutory decision" is entirely silent on that point. Consequently, there can be no claim that Shepherd's rights in the specific stock certificates at issue, if any, were favorably (or unfavorably) altered by the "interlocutory decision." Still further, there is no evidence that the stock certificates were deposited with the clerk pursuant to the "interlocutory decision" (or any other decision). Certainly there is nothing about the language of the decision that compelled deposit of the stock with the clerk. As a result, I have no reason to

---

3. Obviously, when the word "judgment" is used in section 6323(b)(8), it refers not only to the paper which constitutes the "judgment," but the word "judgment" also includes that which is paid, delivered, or created in order to satisfy the judgment. As to the latter point, this conclusion is apparent from the statutory language which speaks of an attorney's lien or contract being "enforceable against such judgment." Hence, "judgment" refers both to the judicial act and that which in whole or in part satisfies the "judgment."

believe that the "interlocutory decision" is a "judgment" which relates to these specific stock certificates.[4]

Third, categorically the "interlocutory decision" is not a "judgment," but was expressly described by the trial judge as a non-appealable order. The Nebraska Supreme Court has so construed the "interlocutory decision." As a result, the "interlocutory decision" lacks the fundamental character of finality that distinguishes the common understanding of the word "judgment" from other court orders. *See, e.g., County of Boyd v. US Ecology, Inc.,* 858 F.Supp. 960, 967 (D.Neb.1994) (discussing what a "judgment" is for purposes of res judicata), *aff'd,* 48 F.3d 359 (8th Cir.), *cert. denied,* —— U.S. ——, 116 S.Ct. 65, 133 L.Ed.2d 27 (1995).

### III.

In summary, the government has established a presumptive right to the stock certificates unless section 6323(b)(8) "trumps" the government's claim. Moreover, the stock certificates are not "a judgment or other amount in settlement" (or the product or proceeds thereof) and thus 26 U.S.C. § 6323(b)(8) does not afford the Law Firms protection from the IRS seizure of those stock certificates. Since section 6323(b)(8) is the sole predicate for the Law Firms' claim, the government's motion for summary judgment must be granted and the Law Firms' cross-motion must be denied.

Accordingly,

IT IS ORDERED that:

1. the government's motion for summary judgment (filing 14) is granted and the Plaintiffs' motion for summary judgment (filing 18) is denied;

2. judgment will be entered by separate document providing in substance that "judgment is entered for the United States of America and against the Plaintiffs providing that Plaintiffs shall take nothing, and their complaint is dismissed with prejudice."

---

4. As a matter of fact, the Law Firms claim that the "stock was not validly issued and would need to be reissued and is therefore still in the posses-sion of" the respective corporations. (Pls.' Br. in Opp'n to Def.'s Mot. for Summ. J. and Br. in Supp. of Pls.' Mot. for Summ. J. at 10.)