# UNITED STATES BY AND THROUGH INTERNAL REVENUE SERVICE *v.* McDERMOTT ET AL.

No. 91–1229.   Argued December 7, 1992—Decided March 24, 1993

SCALIA, J., delivered the opinion of the Court, in which REHNQUIST, C. J., and WHITE, BLACKMUN, KENNEDY, and SOUTER, JJ., joined.

THOMAS, J., filed a dissenting opinion, in which STEVENS and O'CONNOR, JJ., joined, *post*, p. 455.

*James A. Feldman* argued the cause for the United States. On the briefs were *Solicitor General Starr, Acting Assistant Attorney General Bruton, Deputy Solicitor General Wallace, Kent L. Jones*, and *William S. Estabrook*.

*T. Richard Davis* argued the cause for respondents and filed a brief for respondent Zions First National Bank, N. A.

JUSTICE SCALIA delivered the opinion of the Court.

We granted certiorari to resolve the competing priorities of a federal tax lien and a private creditor's judgment lien as to a delinquent taxpayer's after-acquired real property.

I

On December 9, 1986, the United States assessed Mr. and Mrs. McDermott for unpaid federal taxes due for the tax years 1977 through 1981. Upon that assessment, the law created a lien in favor of the United States on all real and personal property belonging to the McDermotts, 26 U. S. C. §§ 6321 and 6322, including after-acquired property, *Glass City Bank* v. *United States*, 326 U. S. 265 (1945). Pursuant to 26 U. S. C. § 6323(a), however, that lien could "not be valid as against any purchaser, holder of a security interest, mechanic's lienor, or *judgment lien creditor* until notice thereof . . . has been filed." (Emphasis added.) The United States did not file this lien in the Salt Lake County Recorder's Office until September 9, 1987. Before that occurred, however—specifically, on July 6, 1987—Zions First National Bank, N. A. (Bank), docketed with the Salt Lake County Clerk a state-court judgment it had won against the McDermotts. Under Utah law, that created a judgment lien on all of the McDermotts' real property in Salt Lake County, "owned . . . at the time or . . . thereafter acquired during the existence of said lien." Utah Code Ann. § 78–22–1 (1953).

On September 23, 1987, the McDermotts acquired title to certain real property in Salt Lake County. To facilitate later sale of that property, the parties entered into an escrow agreement whereby the United States and the Bank released their claims to the real property itself but reserved their rights to the cash proceeds of the sale, based on their priorities in the property as of September 23, 1987. Pursuant to the escrow agreement, the McDermotts brought this interpleader action in state court to establish which lien was entitled to priority; the United States removed to the United States District Court for the District of Utah.

On cross-motions for partial summary judgment, the District Court awarded priority to the Bank's judgment lien. The United States Court of Appeals for the Tenth Circuit affirmed. *McDermott* v. *Zions First Nat. Bank, N. A.*, 945 F. 2d 1475 (1991). We granted certiorari. 504 U. S. 939 (1992).

## II

Federal tax liens do not automatically have priority over all other liens. Absent provision to the contrary, priority for purposes of federal law is governed by the common-law principle that "'the first in time is the first in right.'" *United States* v. *New Britain*, 347 U. S. 81, 85 (1954); cf. *Rankin* v. *Scott*, 12 Wheat. 177, 179 (1827) (Marshall, C. J.). For purposes of applying that doctrine in the present case—in which the competing state lien (that of a judgment creditor) benefits from the provision of § 6323(a) that the federal lien shall "not be valid . . . until notice thereof . . . has been filed"—we must deem the United States' lien to have commenced no sooner than the filing of notice. As for the Bank's lien: Our cases deem a competing state lien to be in existence for "first in time" purposes only when it has been "perfected" in the sense that "the identity of the lienor, *the property subject to the lien*, and the amount of the lien are established." *United States* v. *New Britain*, 347 U. S., at 84

(emphasis added); see also *id.*, at 86; *United States* v. *Pioneer American Ins. Co.*, 374 U. S. 84 (1963).

The first question we must answer, then, is whether the Bank's judgment lien was perfected in this sense before the United States filed its tax lien on September 9, 1987. If so, that is the end of the matter; the Bank's lien prevails. The Court of Appeals was of the view that this question was answered (or rendered irrelevant) by our decision in *United States* v. *Vermont*, 377 U. S. 351 (1964), which it took to "stan[d] for the proposition that a non-contingent . . . lien on all of a person's real property, perfected prior to the federal tax lien, will take priority over the federal lien, regardless of whether after-acquired property is involved."[1] 945 F. 2d, at 1480. That is too expansive a reading. Our opinion in *Vermont* gives no indication that the property at issue had become subject to the state lien only by application of an after-acquired-property clause to property that the debtor acquired after the federal lien arose. To the contrary, the opinion says that the state lien met (presumably at the critical time when the federal lien arose) "the test laid down in *New Britain* that . . . 'the property subject to the lien . . . [be] established.'" 377 U. S., at 358 (citation omitted).[2]

---

[1] As our later discussion will show, we think it contradictory to say that the state lien was "perfected" before the federal lien was filed, insofar as it applies to after-acquired property not acquired by the debtor until after the federal lien was filed. The Court of Appeals was evidently using the term "perfected" (as the Bank would) in a sense not requiring attachment of the lien to the property in question; our discussion of the Court of Appeals' opinion assumes that usage.

[2] The dissent cannot both grant the assumption "that the debtor in *Vermont* acquired its interest in the bank account before the federal lien arose," *post*, at 459, n. 2, and contend that "the debtor's interest in the bank account . . . could have been uncertain or indefinite from the creditors' perspective," *ibid.* In the same footnote, the dissent misdescribes the "critical argument that we rejected" in *Vermont. Ibid.* It was not that "the State's claim could not be superior unless the account had been 'specifically identified' as property subject to the State's lien," *ibid.*, but rather that the State's claim could not be superior unless it had

The argument of the United States that we rejected in *Vermont* was the contention that a state lien is not perfected within the meaning of *New Britain* if it "attach[es] to *all* of the taxpayer's property," rather than "to specifically identified portions of that property." 377 U. S., at 355 (emphasis added).[3] We did not consider, and the facts as recited did not implicate, the quite different argument made by the United States in the present case: that a lien in after-acquired property is not "perfected" as to property yet to be acquired.

The Bank argues that, as of July 6, 1987, the date it docketed its judgment lien, the lien was "perfected as to all real property then and thereafter owned by" the McDermotts, since "[n]othing further was required of [the Bank] to attach the non-contingent lien on after-acquired property." Brief for Respondent 21. That reflects an unusual notion of what it takes to "perfect" a lien.[4] Under the Uniform

"*attach[ed]* to specifically identified portions of that property," *United States* v. *Vermont*, 377 U. S., at 355 (emphasis added).

[3] The dissent claims that "the Government's 'specificity' claim rejected in *Vermont* is analytically indistinguishable from the 'attachment' argument the Court accepts today," since "[i]f specific attachment is not required for the state lien to be 'sufficiently choate,' then neither is specific acquisition." *Post*, at 459 (citation omitted). But the two are not comparable. Until the debtor has acquired the subject property, it is impossible to say that "the property subject to the lien [has been] . . . established," *United States* v. *New Britain*, 347 U. S. 81, 84 (1954). Judicial attachment, on the other hand (and it is important to note that judicial attachment of the property, rather than attachment of the lien to the property, was what the Government's argument in *Vermont* involved), merely brings into the custody of a court property that is *already*—prior to judicial attachment— known to be subject to the lien.

[4] The dissent accepts the Bank's central argument that perfection occurred when "there was 'nothing more to be done' by the Bank 'to have a choate lien' on any real property the McDermotts might acquire." *Post*, at 457–458 (quoting *United States* v. *New Britain, supra*, at 84); see also *post*, at 461. This unusual definition of perfection has been achieved by making a small but substantively important addition to the language of *New Britain*. " '[N]othing more to be done . . . to have a choate lien' "

Commercial Code, for example, a security interest in after-acquired property is generally not considered perfected when the financing statement is filed, but only when the security interest has attached to particular property upon the debtor's acquisition of that property. §§ 9–203(1) and (2), 3 U. L. A. 363 (1992); § 9–303(1), 3A U. L. A. 117 (1992). And attachment to particular property was also an element of what we meant by "perfection" in *New Britain.* See 347 U. S., at 84 ("when . . . the property subject to the lien . . . [is] established"); *id.,* at 86 ("[T]he priority of each statutory lien contested here must depend on the time it attached to the property in question and became [no longer inchoate]").[5] The Bank concedes that its lien did not actually attach to the property at issue here until the McDermotts acquired rights

---

(the language of *New Britain*) becomes "nothing more to be done *by the Bank* to have a choate lien." Once one recognizes that the dissent's concept of a lien's "becom[ing] certain as to the property subject thereto," see *post,* at 457, 461, is meaningless, see n. 5, *infra,* it becomes apparent that the dissent, like the Bank, would simply have us substitute the concept of "best efforts" for the concept of perfection.

[5] The dissent refuses to acknowledge the unavoidable realities that the property subject to a lien is not "established" until one knows what specific property that is, and that a lien cannot be anything other than "inchoate" with respect to property that is not yet subject to the lien. Hence the dissent says that, upon its filing, the lien at issue here "was perfected, even as to the real property later acquired by the McDermotts, in the sense that it was definite as to the property in question, noncontingent, and summarily enforceable." *Post,* at 457. But how could it have been, at that time, "definite" as to this property, when the identity of this property (established by the McDermotts' later acquisition) was yet unknown? Or "noncontingent" as to this property, when the property would have remained entirely free of the judgment lien had the McDermotts not later decided to buy it? Or "summarily enforceable" against this property when the McDermotts did not own, and had never owned, it? The dissent also says that "[t]he lien was *immediately enforceable* through levy and execution against all the debtors' property, *whenever acquired." Ibid.* (emphases added). But of course it was *not* "immediately enforceable" (as of its filing date, which is the relevant time) against property that the McDermotts had not yet acquired.

in that property. Brief for Respondent 16, 21. Since that occurred *after* filing of the federal tax lien, the state lien was not first in time.[6]

But that does not complete our inquiry: Though the state lien was not first in time, the federal tax lien was not necessarily first in time either. Like the state lien, it applied to the property at issue here by virtue of a (judicially inferred) after-acquired-property provision, which means that it did not attach until the same instant the state lien attached, viz., when the McDermotts acquired the property; and, like the state lien, it did not become "perfected" until that time. We think, however, that under the language of § 6323(a) ("shall not be valid as against any . . . judgment lien creditor until notice . . . has been filed"), the filing of notice renders the federal tax lien extant for "first in time" priority purposes regardless of whether it has yet attached to identifiable property. That result is also indicated by the provision, two subsections later, which accords priority, even against *filed* federal tax liens, to security interests arising out of certain agreements, including "commercial transactions financing agreement[s]," entered into before filing of the tax lien. 26 U. S. C. § 6323(c)(1). That provision protects certain security interests that, like the after-acquired-property judgment lien here, will have been recorded before the filing of the tax lien, and will attach to the encumbered property after the filing of the tax lien, and simultaneously with the attachment of the tax lien (*i. e.*, upon the debtor's acquisition of the subject property). According *special* priority to certain state security interests

---

[6] The dissent suggests, *post,* at 458, n. 1, that the Treasury Department regulation defining "judgment lien creditor," 26 CFR § 301.6323(h)–1(g) (1992), contradicts our analysis. It would, if it contained only the three requirements that the dissent describes. In fact, however, it says that to prevail the judgment lien must be perfected, and that "[a] judgment lien is not perfected until the identity of the lienor, *the property subject to the lien,* and the amount of the lien are established." *Ibid.* (emphasis added).

in these circumstances obviously presumes that otherwise the federal tax lien would prevail—*i. e.*, that the federal tax lien is ordinarily dated, for purposes of "first in time" priority against § 6323(a) competing interests, from the time of its filing, regardless of when it attaches to the subject property.[7]

The Bank argues that "[b]y common law, the first lien of record against a debtor's property has priority over those subsequently filed unless a lien-creating statute clearly shows or declares an intention to cause the statutory lien to override." Brief for Respondent Zions First National Bank, N. A., 11.[8] Such a strong "first-to-record" presumption may be appropriate for simultaneously perfected liens under ordinary statutes creating private liens, which ordinarily arise

---

[7] The dissent contends that "there is no persuasive reason for not adopting as a matter of federal law the well-recognized common-law rule of parity and giving the Bank an equal interest in the property." *Post*, at 461, n. 4. As we have explained, the persuasive reason is the existence of § 6323(c), which displays the assumption that all perfected security interests are defeated by the federal tax lien. There is no reason why this assumption should not extend to judgment liens as well. A "security interest," as defined in § 6323, is not an insignificant creditor's preference. The term includes only interests protected against subsequent judgment liens. See 26 U. S. C. §§ 6323(h)(1) and 6323(c)(1)(B). Moreover, the text of § 6323(a) ("The lien . . . shall not be valid as against any purchaser, holder of a security interest, mechanic's lienor, or judgment lien creditor") treats security interests and judgment liens alike. Parity may be, as the dissent says, a "well-recognized common-law rule," *post*, at 461, n. 4, but we have not hitherto adopted it as the federal law of tax liens in 127 years of tax lien enforcement.

[8] The dissent notes that "[n]othing in the law of judgment liens suggests that the possibility, which existed at the time the Bank docketed its judgment, that the McDermotts would *not* acquire the specific property here at issue was a 'contingency' that rendered the Bank's otherwise perfected general judgment lien subordinate to intervening liens." *Post*, at 460. Perhaps. But priorities here are determined, not by "the law of judgment liens," but by § 6323(a), as our case law has interpreted it. The requirement that competing state liens be perfected is part of that jurisprudence.

out of voluntary transactions. When two private lenders both exact from the same debtor security agreements with after-acquired-property clauses, the second lender knows, by reason of the earlier recording, that that category of property will be subject to another claim, and if the remaining security is inadequate he may avoid the difficulty by declining to extend credit. The Government, by contrast, cannot indulge the luxury of declining to hold the taxpayer liable for his taxes; notice of a previously filed security agreement covering after-acquired property does *not* enable the Government to protect itself. A strong "first-to-record" presumption is particularly out of place under the present tax-lien statute, whose *general rule* is that the tax collector prevails even if he has not recorded *at all*. 26 U. S. C. §§ 6321 and 6322; *United States* v. *Snyder*, 149 U. S. 210 (1893). Thus, while we would hardly proclaim the statutory meaning we have discerned in this opinion to be "clear," it is evident enough for the purpose at hand. The federal tax lien must be given priority.

The judgment of the Court of Appeals is reversed, and the case is remanded for further proceedings consistent with this opinion.

*So ordered.*

JUSTICE THOMAS, with whom JUSTICE STEVENS and JUSTICE O'CONNOR join, dissenting.

I agree with the Court that under 26 U. S. C. § 6323(a) we generally look to the filing of notice of the federal tax lien to determine the federal lien's priority as against a competing state-law judgment lien. I cannot agree, however, that a federal tax lien trumps a judgment creditor's claim to after-acquired property whenever notice of the federal lien is filed before the judgment lien has "attached" to the property. *Ante*, at 451–452. In my view, the Bank's antecedent judgment lien "ha[d] [already] acquired sufficient substance and ha[d] become so perfected," with respect to the McDermotts'

after-acquired real property, "as to defeat [the] later-filed federal tax lien." *United States* v. *Pioneer American Ins. Co.,* 374 U. S. 84, 88 (1963).

Applying the governing "first in time" rule, the Court recognizes—as it must—that if the Bank's interest in the property was "perfected in the sense that there [was] nothing more to be done to have a choate lien" before September 9, 1987 (the date the federal notice was filed), *United States* v. *New Britain,* 347 U. S. 81, 84 (1954), "that is the end of the matter; the Bank's lien prevails," *ante,* at 450. Because the Bank's identity as lienor and the amount of its judgment lien are undisputed, the choateness question here reduces to whether "the property subject to the lien" was sufficiently "established" as of that date. *New Britain, supra,* at 84. Accord, *Pioneer American, supra,* at 89. See 26 CFR § 301.6323(h)–1(g) (1992). The majority is quick to conclude that "establish[ment]" cannot precede attachment, and that a lien in after-acquired property therefore cannot be sufficiently perfected until the debtor has acquired rights in the property. See *ante,* at 451–453. That holding does not follow from, and I believe it is inconsistent with, our precedents.

We have not (before today) prescribed any rigid criteria for "establish[ing]" the property subject to a competing lien; we have required only that the lien "*become certain* as to . . . the property subject thereto." *New Britain, supra,* at 86 (emphasis added). Our cases indicate that "certain" means nothing more than "[d]etermined and [d]efinite," *Pioneer American, supra,* at 90, and that the proper focus is on whether the lien is free from "contingencies" that stand in the way of its execution, *United States* v. *Security Trust & Savings Bank,* 340 U. S. 47, 50 (1950). In *Security Trust,* for example, we refused to accord priority to a mere attachment lien that "had not ripened into a judgment," *New Britain, supra,* at 86, and was therefore "contingent upon taking subsequent steps for enforcing it," 340 U. S., at 51.

And in *United States* v. *Vermont,* 377 U. S. 351 (1964), we recognized the complete superiority of a general tax lien held by the State of Vermont upon all property rights belonging to the debtor, even though the lien had not "attach[ed] to [the] specifically identified portions of that property" in which the Federal Government claimed a competing tax lien. *Id.,* at 355. With or without specific attachment, Vermont's general lien was "sufficiently choate to obtain priority over the later federal lien," because it was "summarily enforceable" upon assessment and demand. *Id.,* at 359, and n. 12.

Although the choateness of a state-law lien under § 6323(a) is a federal question, that question is answered in part by reference to state law, and we therefore give due weight to the State's "'classification of [its] lien as specific and perfected.'" *Pioneer American, supra,* at 88, n. 7 (quoting *Security Trust, supra,* at 49). Here, state law establishes that upon filing, the Bank's judgment lien was perfected, even as to the real property later acquired by the McDermotts, in the sense that it was definite as to the property in question, noncontingent, and summarily enforceable. Pursuant to Utah statute, from the moment the Bank had docketed and filed its judgment with the Clerk of the state court on July 6, 1987, it held an enforceable lien upon all nonexempt real property owned by the McDermotts or thereafter acquired by them during the existence of the lien. See Utah Code Ann. § 78–22–1 (1953). The lien was immediately enforceable through levy and execution against all the debtors' property, whenever acquired. See *Belnap* v. *Blain,* 575 P. 2d 696, 700 (Utah 1978). See also Utah Rule Civ. Proc. 69. And it was "unconditional and not subject to alteration by a court on equitable grounds." *Taylor National, Inc.* v. *Jensen Brothers Constr. Co.,* 641 P. 2d 150, 155 (Utah 1982). Thus, the Bank's lien had become certain as to the property subject thereto, whether then existing or thereafter acquired, and all competing creditors were on notice that there

was "nothing more to be done" by the Bank "to have a choate lien" on any real property the McDermotts might acquire. *New Britain, supra,* at 84. See *Vermont, supra,* at 355.[1]

The Court brushes aside the relevance of our *Vermont* opinion with the simple observation that that case did not involve a lien in after-acquired property. *Ante,* at 450–451. This is a wooden distinction. In truth, the Government's "specificity" claim rejected in *Vermont* is analytically indistinguishable from the "attachment" argument the Court accepts today. Vermont's general lien applied to all of the debtor's rights in property, with no limitation on when those rights were acquired, and remained valid until the debt was satisfied or became unenforceable. See 377 U. S., at 352. The United States claimed that its later-filed tax lien took priority over Vermont's as to the debtor's interest in a particular bank account, because the State had not taken "steps to perfect its lien by attaching the bank account in question" until after the federal lien had been recorded. Brief for United States in *United States* v. *Vermont,* O. T. 1963, No. 509, p. 12. "Thus," the Government asserted, "when the federal lien arose, the State lien did not meet one

---

[1] The Department of Treasury regulations defining "judgment lien creditor" for purposes of § 6323(a) set forth only three specific requirements for a choate lien (corresponding to the three "establish[ment]" criteria of *New Britain*). The judgment creditor must "obtai[n] a valid judgment" (thus establishing the lienor) for the recovery of "specifically designated property or for a certain sum of money" (thus establishing the amount of the lien), and if recording or docketing is "necessary under local law" for the lien to be effective against third parties, the judgment lien "is not perfected with respect to real property until the time of such recordation or docketing." 26 CFR § 301.6323(h)–1(g) (1992). The last requirement—recording or docketing—is the only specific requirement recognized in the regulations for establishing the real property subject to the judgment lien. The regulations in no way suggest that § 6323(a) imposes any "attachment" condition for after-acquired property. Such a condition would be, in effect, an additional recordation requirement that is not otherwise imposed by local law.

of the three essential elements of a choate lien: that it attach to specific property." *Ibid.* In rejecting the federal claim of priority, we found no need even to mention whether the debtor had acquired its property interest in the deposited funds before or after notice of the federal lien. If specific attachment is not required for the state lien to be "sufficiently choate," 377 U. S., at 359, then neither is specific acquisition.[2]

Like the majority's reasoning today, see *ante,* at 452, the Government's argument in *Vermont* rested in part on dicta from *New Britain* suggesting that "attachment to specific property [is] a condition for choateness of a State-created lien." Brief for United States in *United States* v. *Vermont, supra,* at 19. See *New Britain,* 347 U. S., at 86 ("[T]he priority of each statutory lien contested here must depend on the time it *attached* to the property in question and became choate") (emphasis added). *New Britain,* however, involved competing statutory liens that had concededly "attached to the same real estate." *Id.,* at 87. The only issue was whether the liens were otherwise sufficiently choate. Thus, like *Security Trust* (and, in fact, like all of our cases before *Vermont*), *New Britain* provided no occasion to consider the necessity of attachment to property that was not specifically identified at the time the state lien arose.

---

[2] Even assuming, as the majority does, that the debtor in *Vermont* acquired its interest in the bank account before the federal lien arose, the critical argument that we rejected in that case was the contention that the State's claim could not be superior unless the account had been "specifically identified" as property subject to the State's lien. 377 U. S., at 355. At the time of the federal filing, the debtor's interest in the bank account, like the McDermotts' interest in the property at issue here, could have been uncertain or indefinite from the creditors' perspective. Nevertheless, in both cases, the particular property was "known to be subject to the [state] lien," *ante,* at 451, n. 3, simply because that lien, by its terms, applied without limitation to all property acquired at any time by the debtor.

Nothing in the law of judgment liens suggests that the possibility, which existed at the time the Bank docketed its judgment, that the McDermotts would *not* acquire the specific property here at issue was a "contingency" that rendered the Bank's otherwise perfected general judgment lien subordinate to intervening liens. Under the relevant background rules of state law, the Bank's interest in after-acquired real property generally could not be defeated by an intervening statutory lien. In some States, the priority of judgment liens in after-acquired property is determined by the order of their docketing. 3 R. Powell, Law of Real Property ¶ 481[1], p. 38–36 (P. Rohan rev. 1991) (hereinafter Powell). See, *e. g., Lowe* v. *Reierson,* 201 Minn. 280, 287, 276 N. W. 224, 227 (1937). In others, the rule is that "[w]hen two (or more) judgments are successively perfected against a debtor and thereafter the debtor acquires a land interest[,] these liens, attaching simultaneously at the time of the land's acquisition by the debtor, are regarded as on a parity and no priority exists." 3 Powell ¶ 481[1], pp. 38–35 to 38–36. See, *e. g., Bank of Boston* v. *Haufler,* 20 Mass. App. 668, 674, 482 N. E. 2d 542, 547 (1985); *McAllen State Bank* v. *Saenz,* 561 F. Supp. 636, 639 (SD Tex. 1982). Thus, under state common law, the Bank would either retain its full priority in the property by virtue of its earlier filing or, at a minimum, share an equal interest with the competing lienor.[3] The fact that the prior judgment lien remains effective against third parties without further efforts by the judgment creditor is enough for purposes of

---

[3] Article 9 of the Uniform Commercial Code is inapposite, and the Court's reliance on it misplaced. See *ante,* at 451–452. The technical rules governing the perfection and priority of the special security interests in personal property created by Article 9 have no application to traditional judgment liens in real property, see § 9–102, 3 U. L. A. 73 (1992), and should have no bearing on the federal doctrine of "choateness." In the context of determining the relative priority of a competing statutory judgment lien, it is *Article 9's* notion of perfection that is the more "unusual." *Ante,* at 451.

§ 6323(a), since the point of our choateness doctrine is to respect the validity of a competing lien where the lien has become certain as to the property subject thereto and the lienor need take no further action to secure his claim. Under this federal-law principle, the Bank's lien was sufficiently choate to be first in time.[4]

I acknowledge that our precedents do not provide the clearest answer to the question of after-acquired property. See *ante*, at 455. But the Court's parsimonious reading of *Vermont* undercuts the congressional purpose—expressed through repeated amendments to the tax lien provisions in the century since *United States* v. *Snyder*, 149 U. S. 210 (1893)—of "protect[ing] third persons against harsh application of the federal tax lien," Kennedy, The Relative Priority of the Federal Government: The Pernicious Career of the Inchoate and General Lien, 63 Yale L. J. 905, 922 (1954). The attachment requirement erodes the "preferred status" granted to judgment creditors by § 6323(a), and renders a choate judgment lien in after-acquired property subordinate

---

[4] Even if the Court were correct that attachment is the determinative criterion of choateness, we would have a tie, since the federal lien "did not attach [to the after-acquired property] until the same instant the state lien attached." *Ante*, at 453. That being so, there is no persuasive reason for not adopting as a matter of federal law the well-recognized common-law rule of parity and giving the Bank an equal interest in the property. See 3 Powell ¶ 481[1]. Section 6323(a)'s requirement that the federal lien be "filed" to be effective may determine when the lien arises for general priority purposes, but the word "filed" provides no textual basis for concluding that a tie goes to the Government, and simply declaring that it does, see *ante*, at 453, does not make it so. The special exception in § 6323(c), which protects later-arising security interests that are based on certain preferred financing agreements, see *ibid.*, does not imply that judgment creditors lose out. Indeed, § 6323(c) demonstrates that Congress *has* considered the question of later-arising property, and the absence of an analogous provision in § 6323(a) suggests that Congress was content to let the courts apply one of the existing background rules to determine the relative priority (or parity) of the federal lien as against competing judgment liens in after-acquired property.

to a "secret lien for assessed taxes." *Pioneer American,* 374 U. S., at 89. I would adhere to a more flexible choateness principle, which would protect the priority of validly docketed judgment liens.

Accordingly, I respectfully dissent.