UNITED STATES of America, Plaintiff,

v.

**Maggie Inez THOMPSON,
et al., Defendants.**

No. 95–0431–BH–C.

United States District Court,
S.D. Alabama,
Northern District.

Jan. 21, 1997.

William R. Sawyer, U.S. Atty's Office, Mobile, AL, Carol Ide Koehler, Lynne M. Murphy, U.S. Dept. of Justice, Tax Div., Washington, DC, for U.S.

Robert R. Blair, Selma, AL, for Maggie Inez Thompson, Paul A. Thompson, Sharon Thompson.

J. Garrison Thompson, Selma, AL, for Sweet Water State Bank.

## ORDER

HAND, Senior District Judge.

This is an action brought by the government to foreclose federal tax liens on real property. This case came on for non-jury trial on January 6, 1997. Upon careful consideration of the arguments and the testimony presented, the court concludes as follows.

### FINDINGS OF FACT

1. Each year from 1984 to 1990, Paul and Sharon Thompson failed to pay some or all of their personal income taxes (assessments were made in June of every year, 1985–1991, to no avail). As of July 28, 1995, the Thompsons owed the federal government $88,774.49 in income taxes, interest, and penalties. In addition, as of March 13, 1995, Paul Thompson owed the federal government $34,613.10 for unpaid employment taxes, interest, and penalties for the years 1986 to 1989.

2. The Thompsons were discharged from all personal liability for these debts by order of the Bankruptcy Court on January 8, 1996, except for Paul Thompsons personal liability for the trust fund portion of his employment taxes in the amount of $7,751.12 as of July 28, 1995.[1] The Bankruptcy order also did not relieve the Thompsons from any government liens on their real property arising out of non-payment of taxes.

3. On February 15, 1979, the defendants Paul and Sharon Thompson owned or had an interest in real property near Thomasville, Alabama, in Marengo County Alabama (hereinafter "Marengo Property").

4. Paul Thompson's wood pulp business had failed by August 21, 1991, and the Thompsons decided to sell their house. By deed dated August 26, 1991, the defendants Paul and Sharon Thompson purportedly conveyed their interest in the Marengo property to James Leroy Thompson (now deceased) and Maggie Inez Thompson, the parents of Paul Thompson.

5. The elder Thompsons took out a $15,-000 loan from Sweetwater Bank to purchase the property. Sweetwater secured the loan with a mortgage recorded on September 6, 1991, with the Judge of Probate in Marengo County. Approximately $10,000 of the loan proceeds went to pay off the prior mortgage on the real property, and the remaining proceeds went to James Leroy Thompson and Maggie Thompson.

6. On November 1, 1991, a Notice of Federal Tax Lien was filed with the Judge of Probate, Marengo County, Alabama, with respect to the federal personal income tax liabilities mentioned in paragraph one. This was the first Notice of Federal Tax Lien filed in Marengo County for the personal income tax liabilities of the Thompsons, some of which dated back to 1985.

7. Subsequent to the sale of the house to the elder Thompsons, Paul and Sharon Thompson continued to live in the house and paid $300.00 per month in rent to Paul's parents.

---

1. The parties agree that Paul Thompson is indebted to the government for the trust fund portion of employment taxes in the amount of $7,751.12 as of July 28, 1995.

8. The monthly note to pay off the loan from Sweetwater Bank used to purchase the house amounted to $300.00 a month.

9. Sharon Thompson testified that the house was worth "about $20,000" at the time it was transferred to the elder Thompsons. A real estate appraisal, dated August 19, 1991, conducted by Sweetwater Bank estimated the value of the house and land to be $27,500. Both Paul and Sharon Thompson testified that the house had deteriorated considerably since they sold it.

## CONCLUSIONS OF LAW

1. When Paul and Sharon Thompson failed to pay their assessed tax liabilities, liens arose in favor of the government on all property and rights to property of the Thompsons, including the Marengo property. 26 U.S.C. §§ 6321, 6322. These liens arose as early as the first assessment, June 3, 1985.

2. Even though the bulk of the Thompson's assessed federal tax liabilities were discharged in their bankruptcy case, the discharge does not prohibit the Government from seeking to foreclose the tax liens arising out of those liabilities. "A bankruptcy discharge extinguishes only one mode of enforcing a claim—namely, an action against the debtor in personam—while leaving intact another—namely, an action against the debtor in rem." *Dewsnup v. Timm,* 502 U.S. 410, 418, 112 S.Ct. 773, 778, 116 L.Ed.2d 903 (1992).

■ 3. Federal tax liens, however, do not automatically have priority over other liens or other rights to the property. "Absent provision to the contrary, priority for purposes of federal law is governed by the common-law principle that 'the first in time is the first in right.'" *United States v. McDermott,* 507 U.S. 447, 449, 113 S.Ct. 1526, 1527–28, 123 L.Ed.2d 128 (1993).

4. In the present case, the Internal Revenue Code provides that, "[t]he lien imposed by section 6321 shall not be valid as against any purchaser ... until notice thereof ... has been filed by the Secretary." 26 U.S.C. § 6323(a). A "purchaser" is defined as,

a person who, for adequate and full consideration in money or money's worth, acquires an interest (other than a lien or security interest) in property which is valid under local law against subsequent purchasers without actual notice.

26 U.S.C. § 6323(h)(6).

5. It is undisputed that James Leroy and Maggie Inez Thompson purportedly "purchased" and acquired title to the Thompson property at issue prior to the filing of the Notice of Federal Tax Lien. The only issue in this case is whether Maggie Inez Thompson is a "purchaser" so as to be afforded the protection granted by § 6323(a).

■ 6. The government first contends that because the Thompsons still live in the house and because the rent payment owed by Paul and Sharon Thompson to Maggie Inez Thompson is the same amount that Maggie Inez Thompson owes to the bank on the loan, that the house was never actually sold. It is undisputed, however, that it is Maggie Inez Thompson who is indebted to the bank and who must satisfy the obligation. The fact that the parties seemed to have arranged for the loan payment to equal the rent does not change Maggie Inez Thompson's ownership of the house or her duty to discharge the house loan.

7. The government next argues, without citing any legal authority, that the house was actually purchased for approximately $10,000, not $15,000, because approximately $5,000 of the proceeds from the sale of the house was returned to the buyers. The evidence indicates, however, that the actual price of the house was $15,000. The fact that Paul and Sharon Thompson paid approximately $5,000 from the sale of the house to the elder Thompsons does not indicate that the actual consideration for the house is reduced by that amount. Both Sharon and Maggie Inez Thompson testified that the house was sold and purchased for $15,000 and that the proceeds of the sale were used to pay off a prior mortgage [2] and to satisfy "other indebtedness." See e.g., Affidavits of Sharon Thompson and Maggie Inez Thomp-

---

**2.** The first mortgage was to Mid–State Homes. The balance owed to Mid–State at the time of the

sale was $9,953.76. See Affidavit of Sharon Thompson.

son. The court therefore finds that the house was sold for $15,000.

8. The question remains whether $15,000 is enough to qualify the elder Thompsons as bona fide purchasers. The evidence indicates that the house certainly was worth more than $15,000. The appraisal done contemporaneously with the 1991 sale indicates that the property was worth $27,-500. Sharon Thompson's own estimate is closer to $20,000. There is little case law actually defining "adequate and full consideration" under 26 U.S.C. § 6323(h)(6). " 'Full and adequate consideration' is interpreted by Treasury regulations to be an amount 'having a reasonable relationship to the true value of the interest in property acquired.' "Rodeck v. *United States,* 697 F.Supp. 1508, 1511 (D.Minn.1988) (citing 26 C.F.R. § 301.6323(h)–1(f)(3)). The property involved is in rural Alabama. Sharon Thompson has testified that the family needed money after her husband's business failed and the $15,000 price was the best they could get on short notice. See Affidavit of Sharon Thompson. Under these circumstances, the court concludes that $15,000 represents valuable consideration and bears a reasonable relationship to the value of the Thompson's property. The fact that the house was purchased for an amount somewhat less than its value does not mean that Maggie Inez Thompson is not a bona-fide purchaser entitled to the protection of § 6323(h)(6).

## CONCLUSION

The court holds that the government is not entitled to foreclose the tax liens by selling the real property sold by Paul and Sharon Thompson to James Leroy and Maggie Inez Thompson. The government is, however, entitled to a personal judgment against Paul Thompson for the unpaid trust fund tax liabilities of which there is no dispute among the parties.