123 F.3d 279
 In the Matter of DIBERT, BANCROFT & ROSS COMPANY LIMITED, Debtor.
John ROSS, Deceased; Gloria Ross, Individually and as the
duly appointed Administratrix of the Succession of John
Ross, Substituted as party Plaintiff in place and stead of
John Ross; Carolyn Ross; Kathleen Penick; Hancock
National Bank, Appellants,
v.
Robert L. MARRERO; Central Progressive Bank; Dibert,
Bancroft & Ross Company Limited; United States of
America, Appellees.
 No. 96-30237.
 United States Court of Appeals,
Fifth Circuit.
 Sept. 15, 1997.
 
 Kevin C. Schoenberger, New Orleans, LA, for John and Gloria Ross.
 Walter C. Antin, Jr., Hammond, LA, for Carolyn Ross, Kathleen Penick and Hancock Nat. Bank.
 D. Michael Dendy, Gretna, LA, for Robert L. Marrero.
 Omer Frederick Kuebel, III, Locke, Purnell, Rain and Harrell, New Orleans, LA, David M. Culpepper, New Orleans, LA, for Central Progressive Bank.
 Thomas V.M. Linguanti, U.S. Department of Justice, Tax Division, Appellate Section, Washington, DC, Richard Bradshaw Farber, Department of Justice, Tax Division, Washington, DC, for United States.
 Appeal from the United States District Court for the Eastern District of Louisiana.
 BEFORE JOLLY, JONES and WIENER, Circuit Judges.
 ON PETITION FOR REHEARING
 (Opinion June 30, 1997, 5th Cir. 1997, 117 F.3d 160)
 PER CURIAM:
 
 
 1
 IT IS ORDERED that the petition for rehearing filed on behalf of Appellee United States of America is DENIED.
 
 
 2
 In attempting once again to bring its federal tax lien under the umbrella of United States v. McDermott,[1] the government mischaracterizes, misconstrues, or at a minimum misapprehends, our panel opinion when it characterizes our holding as determining that the Ross Group's leasehold collateral mortgage encumbered the tangible Foundry Property "when it was repurchased by Debtor," and in concluding--based on this mischaracterization--that "the leasehold collateral mortgage and the federal tax liens encumbered that property at precisely the same moment." First, that incorrectly portrays both the holding and the analysis of the panel opinion; second, the operable facts of the instant case are substantially different or distinguishable from the facts in McDermott.[2] In McDermott, the mortgagor/tax lienee had no preexisting ownership or interest of any nature whatsoever in the subject properties; consequently, the date on which the lienee acquired the property indisputably was the first date on which the previously existing encumbrances could attach to that property. In stark contrast, the Debtor here owned the land in Tangipahoa Parish, built the facilities and located the tangible property thereon, (1) before consummating the financing deal with the Parish, under which the Debtor retained both possession and all incidents of ownership other than record title, pignoratively transferring record title only and "leasing" the property back while retaining the right to regain record title (upon elimination of the bond indebtedness) by exercising the so-called repurchase option (redemption agreement); (2) before entering into the loan transaction with the Ross Group involving, inter alia, the leasehold mortgage which included the Debtor's assignment of the repurchase agreement to the Ross Group; and (3) before the filing of the federal tax liens. Not only was the recording of the collateral leasehold mortgage prior in time to the recording of the federal tax liens, but given the purely financing or pignorative nature of the arrangement and the absence of surrender by the Debtor of possession and ownership, the collateral mortgage became effective against all Foundry property not upon exercise of the repurchase agreement but from the very beginning (ab initio). Only by payment of the debt to the Ross Group or release or cancellation of its collateral mortgage could the Foundry property be freed of such encumbrance.
 
 
 3
 Finally, although we did not reach the question of the identity of the true beneficiary of the Debtor's exercise of the repurchase agreement (because we did not need to), we note in passing that--because the repurchase option had been collaterally assigned to the Ross Group as mortgagee and remained thus assigned as of the time of its exercise--the redemption by the Debtor would have to be deemed to be for the benefit of the assignee of that option, i.e., the Ross Group, as mortgagee. Thus, regardless of confusion, if need be even record title would have passed from the Parish to the Ross Group, not the Debtor, upon any exercise of the repurchase option, at least to the extent of the then-current balance due on the Debtor's indebtedness.
 
 
 4
 When the panel opinion's Louisiana Civil Law analysis is considered in its entirety (the correctness of which the government, in its petition for rehearing expressly does not question), the position of the government that the panel "ignored material federal tax lien law in reaching its determination" is shown to be demonstrably fallacious. Indeed, it is the government that would have us ignore the Civil Law analysis with which it does not quarrel when it urges us to apply McDermott[3] and other clearly inapposite jurisprudence.[4]
 
 
 
 [1]
 507 U.S. 447, 113 S.Ct. 1526, 123 L.Ed.2d 128 (1993)
 
 
 [2]
 True, a statement or two in the panel opinion, when viewed in a vacuum and out of context, provide the government with the proverbial reed against which to lean its characterization; but just as truly, that reed is too slender to support the government's position. For instance, we used the Latin phrases ipso facto and nunc pro tunc inadvisedly when we should have (and meant to) use ab initio. Slip op. at 37. Given the purely--and obviously--pignorative nature of the financing arrangement between the Debtor and the Parish, the Debtor/Mortgagor never relinquished ownership or possession of the tangible property or the land in question, only record title for encumbrance purposes, so that the Ross Group's mortgage attached ab initio, i.e., from the outset. There was nothing inchoate about it in the McDermott sense; the right of seizure and sale might be "inchoate" until the debt secured is defaulted upon but the efficacy and ranking of the encumbrance is not inchoate
 
 
 [3]
 507 U.S. 447, 113 S.Ct. 1526, 123 L.Ed.2d 128 (1993)
 
 
 [4]
 E.g., United States v. Acri, 348 U.S. 211, 75 S.Ct. 239, 99 L.Ed. 264 (1955)