An order consistent with this memorandum opinion will be entered.

**In re Harry K. McCORD and Linda Susan McCord, Debtors.**

**Harry K. McCord and Linda Susan McCord, Plaintiffs,**

v.

**Petland, Inc., United States Department of Treasury, Internal Revenue Service, Defendants.**

**Bankruptcy No. 99–31298.
Adversary No. 00–3116.**

United States Bankruptcy Court, N.D. West Virginia.

May 30, 2001.

---

Michael G. Clagett, Fairmont, WV, for plaintiffs.

Pat Genis, Washington, DC, Kathy M. Santa Barbara, Martinsburg, WV, for defendants.

## MEMORANDUM OPINION AND ORDER

L. EDWARD FRIEND, II, Bankruptcy Judge.

This matter is before the Court pursuant to the Complaint to Determine Priority of Liens filed by the debtors, Harry K. McCord and Linda Susan McCord ("the McCords"). Defendant United States Department of Treasury, Internal Revenue Service ("IRS") and Defendant Petland, Inc. ("Petland") both claim a priority security interest in the same leasehold items, equipment, and inventory. The Court has jurisdiction by virtue of 28 U.S.C. § 1334 and the standing order of reference in this district. The matter before the Court is a core proceeding pursuant to 28 U.S.C. § 157(b).

### FACTS

The McCords owned and operated two pet stores in Maryland, initially as a sole proprietorship, and later as a corporation owned wholly by the McCords. The two stores were located in Lavale and in Hagerstown. Harry McCord obtained the Lavale store by assignment from a previous franchisee on June 1, 1992, and obtained the Hagerstown store by franchise agreement on February 4, 1993. On December

15, 1997, Harry McCord filed Articles of Incorporation of Brandywine Pets, Inc. ("Brandywine"). The McCords transferred the assets and liabilities of the pet stores to Brandywine sometime in 1998.

Prior to the incorporation, Petland obtained two liens on the McCords' pet stores. On December 4, 1997, the McCords executed two promissory notes in favor of the defendant Petland, Inc. ("Petland") in the amounts of $95,000 and $60,646.73. The notes were secured by a lien on all accounts, leasehold items, fixtures, inventory, equipment, proceeds, and after acquired collateral of the Hagerstown and Lavale stores, respectively. Petland filed a UCC–1 financing statement for the interest in the Lavale store with the Maryland Department of Assessments and Taxation on January 31, 1997, and filed a financing statement for the interest in the Hagerstown store on May 15, 1997.

Subsequent to Petland's filing of its UCC financing statements, the IRS filed two Notices of Federal Tax Liens in Berkeley County, West Virginia, the McCords' county of residence. These liens arose from unpaid federal Insurance Contribution Act ("FICA") taxes.[1] The notices were filed on November 13, 1998, and on April 15, 1998.

The debtors filed a petition under Chapter 13 of the Bankruptcy Code on May 25, 1999. In their schedules, the McCords claimed to have $60,000 assets in real property and $91,803.05 in personal property. The McCords claim a personal property interest of $1,000 in fixtures and $10,000 in actual liquidation value of inventory in the two stores. During discovery,

the McCords admitted that essentially all of the inventory on hand on the date of the bankruptcy filing came into existence after April 14, 1998 (the day before the first tax lien was filed); that there were no accounts receivable on April 14, 1998; and that all leasehold items, fixtures, and equipment were purchased prior to April 14, 1998. The McCords further stated that the fair market value of the leasehold items, fixtures, and equipment was $39,808 but could probably be sold for only $1,000 to $2,000.

Petland maintains that its liens have priority over those of the IRS by virtue of the fact that it perfected its liens before the IRS filed its notices of liens. The IRS contends that Petland's liens attached to property acquired by the McCords after the IRS filed its notices and that the IRS liens have priority. The IRS filed a secured claim for $70,817.79. Petland filed a secured claim for $237,175.42. On August 7, 2000, the McCords filed this adversary proceeding to determine the relative priority of these secured liens.

## DISCUSSION

The United States Supreme Court addressed similar issues in *Internal Revenue Service v. McDermott,* 507 U.S. 447, 113 S.Ct. 1526, 123 L.Ed.2d 128 (1993), holding that a federal tax lien filed before judgment debtors acquired real property had priority over the judgment creditor's previously recorded Utah state lien. On December 9, 1986, the IRS assessed the McDermotts for unpaid federal taxes for 1997 through 1981. *Id.* at 448, 113 S.Ct.

1. These taxes were assessed on March 31, 1997; June 30, 1997; October 13, 1997; and April 6, 1998, for the period ending December 31, 1996; March 31, 1997; June 30, 1997; and December 31, 1997, respectively, for a total of $70,817.79. Additionally, the IRS has an unsecured priority claim for the debtors'

income taxes for the year ending December 31, 1995, and for Federal Unemployment Tax Act ("FUTA") taxes for the year ending December 31, 1997, and a general unsecured claim for penalties and interest. The income taxes, FUTA taxes, penalties, and interest are not relevant to this adversary proceeding.

1526. Upon that assessment, pursuant to 26 U.S.C. § 6321 and § 6322, a lien was created in favor of the IRS on all real and personal property of the McDermotts, including after-acquired property. *Id.* The IRS filed notice of the lien on September 9, 1987. *Id.* Prior to that, on July 6, 1987, Zions First National Bank had docketed a Utah state court judgment against the McDermotts, creating a judgment lien under Utah law on all of the McDermotts' real property then owned or thereafter acquired. *Id.*

Thereafter, on September 23, 1987, the McDermotts acquired title to a parcel of real property. *Id.* at 448–449, 113 S.Ct. 1526. The McDermotts brought an interpleader action in state court to establish which lien was entitled to priority; the case was removed to District Court where Zions First National Bank was awarded priority. The Tenth Circuit Court of Appeals affirmed, and the United States Supreme Court granted certiorari and reversed and remanded.

The Court began its analysis by noting that "[f]ederal tax liens do not automatically have priority over all other liens. Absent provision to the contrary, priority for purposes of federal law is governed by the common-law principle that 'the first in time is the first in right.'" *Id.* at 449, 113 S.Ct. 1526, quoting *United States v. New Britain,* 347 U.S. 81, 85, 74 S.Ct. 367, 370, 98 L.Ed. 520 (1954). Noting that under 26 U.S.C. § 6323(a) the IRS' lien was "not valid … until notice thereof…has been filed," the Court deemed the IRS' lien "to have commenced no sooner than the filing of notice." *Id.* at 449, 113 S.Ct. 1526.

Considering Zions First National Bank's lien, the Court stated that "[o]ur cases deem a competing state lien to be in existence for 'first in time' purposes only when it has been 'perfected' in the sense that 'the identity of the lienor, *the property subject to the lien,* and the amount of the lien are established.'" *Id.* at 449–450, 113 S.Ct. 1526, (emphasis in original) quoting *United States v. New Britain,* 347 U.S. at 84, 74 S.Ct. at 369. As a result, establishment of priority hinged on whether the bank's judgment lien was "perfected in that sense" before the IRS had filed its tax lien on September 9, 1987. *Id.* at 450, 113 S.Ct. 1526. The Court concluded that a lien in after-acquired property is not "perfected" until the debtor's acquisition of that property. *Id.* at 451–453, 113 S.Ct. 1526. Therefore, the Court reasoned, Zions First National Bank's lien was not "first in time" even though it was filed prior to the IRS' filing. *Id.*

The IRS' lien in the after-acquired property also attached at the moment the McDermotts acquired the property. The Court noted that the two liens attached at exactly the same instant. *Id.* at 453, 113 S.Ct. 1526. The Court concluded, however, that "under the language of § 6323(a) ('shall not be valid as against any … judgment lien creditor until notice … has been filed'), the filing of notice renders the federal tax lien extant for 'first in time' priority purposes regardless of whether it has yet attached to identifiable property." [2] *Id.* at 453, 113 S.Ct. 1526.

▮▮▮ In the instant case, the *McDermott* analysis is appropriate. First, the United States has a secured claim in all of

---

**2.** The Supreme Court defends its position in part by noting that while a "first-to-record" presumption may be appropriate between two voluntary transactions involving after-acquired property, the Government "cannot indulge the luxury of declining to hold the tax-

payer liable for taxes; notice of a previously filed security agreement covering after-acquired property does *not* enable the Government to protect itself." *McDermott,* 507 U.S. 447, 455, 113 S.Ct. 1526, 1531, 123 L.Ed.2d 128.

the McCords' property, including the property subject to Petland's interest. A federal tax lien arose upon assessment and attaches to all property of the McCords. 26 U.S.C. §§ 6321,6322. The IRS filed a proof of claim for $70,817.79. Under 11 U.S.C. § 506(a), an allowed claim is secured to the extent of a debtor's interest in the property of the estate. Since the McCords indicate in their schedules that they have assets in excess of $70,817.79, the United States has an allowed secured claim. There is no dispute that Petland has a secured interest under Maryland law.

█ Next, the Court must determine when the relative security interests of the IRS and of Petland were perfected. Petland obtained an interest in all accounts, leasehold items, fixtures, inventory, equipment, proceeds, and after-acquired collateral by security agreement, with financing statements filed pursuant to Maryland law on January 31, 1997, and May 15, 1997. The liens on the relevant property already acquired by the McCords were perfected on those dates. However, the liens on any after-acquired property were not perfected until the McCords' actual acquisition of that property. The United States' tax lien notices were filed on November 13, 1998, and April 15, 1998. These liens were perfected on those dates as far as property previously acquired by the McCords. The liens on any after-acquired property were not perfected until the McCords actually acquired the property.

### CONCLUSION

Under the *McDermott* analysis, the Court finds that Petland has priority over the IRS liens on any accounts, leasehold items, fixtures, inventory, equipment and proceeds of the two Maryland pet stores according to the security agreement so long as the McCords acquired that property prior to April 15, 1998. The IRS has priority on any accounts, leasehold items, fixtures, inventory, equipment and proceeds of the two Maryland pet stores acquired by the debtors on or after April 15, 1998.

It is accordingly **SO ORDERED.**

The Clerk is directed to transmit copies of this Order to the parties in interest.