**ANSEL CAPITAL INVESTMENT, LLC, a Tennessee limited liability company, Plaintiff,**

v.

**UNITED STATES of America, through its agency, INTERNAL REVENUE SERVICE, Defendant.**

**United States of America, Plaintiff,**

v.

**Curtis Swanson, Ronald Stephen Cavendar as Trustee of the 2004 Swanson Children's Trust, Ansel Capital Investment, LLC, as Successor in Interest to Prime Enterprises, LLC, Ravalli County, William Delaney dba Leaves-N-Snow, Defendants.**

**Nos. CV 08–57–M–DWM, CV 08–93–M–DWM.**

United States District Court, D. Montana, Missoula Division.

July 1, 2009.

Steven M. Johnson, Church Harris Johnson & Williams, Great Falls, MT, for Plaintiff.

Adair Ford Boroughs, U.S. Department of Justice, Washington, DC, George F. Darragh, Jr., Office of the U.S. Attorney, Great Falls, MT, Daniel Browder, Ravalli County Attorney's Office, Hamilton, MT, for Defendants.

Brian Marchant, Corvallis, MT, pro se.

Mary Marchant, Corvallis, MT, pro se.

## ORDER NUNC PRO TUNC

DONALD W. MOLLOY, District Judge.

Plaintiff Ansel Capital Investment, LLC ("Ansel") brought an action against the United States, seeking a declaration that the Internal Revenue Service may not execute recorded tax liens against real property located in Ravalli County ("the Property") against which Ansel claims it holds a judgment lien. The United States initiated a separate action against Defendants Curtis Swanson, Ronald Steven Cavendar as Trustee of the 2004 Swanson Children's Trust ("the Trust"), Ansel, Ravalli County, and William Delaney (*pro se*), seeking to reduce to judgment outstanding federal tax liabilities assessed against Swanson and to foreclose federal tax liens upon the Property, which was at one time titled in the Trust. The United States asks the Court to order the Property foreclosed and sold to satisfy outstanding liens according to priority amongst the remaining defendants. The Court consolidated the actions.

Before the Court are the United States' Motion for Summary Judgment and Ravalli County's Motion for Joinder of Parties. The United States seeks summary judgment in its favor, specifically, a judgment that the federal tax liens have priority over the judgment lien Ansel holds. Ravalli County moves the Court to join Brian and Mary Marchant to this action, claiming they hold liens against the Property and should therefore be parties to the consolidated action. For the reasons explained below, the Court will grant both motions.

I

In 2004, prior to the transactions out of which the issues in this matter arose, Cur-

tis Swanson, his father, Stan, and a business partner were named in a criminal complaint filed by the Securities and Exchange Commission. The complaint alleged that the defendants operated a business called Safescript Pharmacies and were engaged in criminal wrongdoing. The defendants pleaded guilty and were sentenced.

In 2004 Ansel's predecessor in interest, Prime Enterprises, LLC, filed suit against Swanson in federal court, alleging that Swanson owed Prime Enterprises over $1.6 million on promissory notes assigned to Prime Enterprises. The promissory notes secured funds Swanson borrowed from banks that subsequently went into receivership under the FDIC. On February 4, 2005, default judgment was entered in favor of Prime Enterprises and against Swanson, totaling $1,611,881.85, plus interest, attorneys fees and costs. *See Prime Enterprises, LLC v. Swanson,* CV 04–153–M–LBE.

In June of 2005 the United States Internal Revenue Service recorded Notices of Federal Tax Lien against the Trust as alter ego, nominee, or fraudulent transferee of Swanson. According to the United States, Swanson owed trust fund tax liabilities from the taxable years 1998–2001.

In 2007 Prime Enterprises initiated another action against Swanson, the Trust, and others, alleging that Swanson and others purchased real property in Ravalli County in 2004, titled it in Swanson's name, then transferred it to the Trust. Prime Enterprises alleged that later in 2004 the Trust sold the property and used the proceeds to purchase the Property— located in Hamilton, Montana, on Bass Lane—which was titled to the Trust. On January 16, 2007, default judgment was entered in favor of Prime Enterprises and against the defendants. The Court ordered, *inter alia,* that the fraudulent transfer of assets or obligations from Swanson to the Trust to purchase the Property were avoided and set aside to the extent necessary to satisfy the judgment against Swanson in CV 04–153–M–LBE, "including avoidance of use of the proceeds of sale ... to purchase real property [at] ... 688 Bass Lane." *See Prime Enterprises, LLC v. Swanson,* CV 06–21–M–DWM, dkt. # 31 at 2–3.

The following stipulated facts appear in the Scheduling Order in this action: (1) Ansel's predecessor in interest, Prime Enterprises, LLC, obtained a default judgment in January of 2007, determining that the Trust was Swanson's alter ego and the transfer of the Property from Swanson to the Trust was fraudulent; *See Prime Enterprises, LLC v. Swanson, et al.,* CV 06–21–M–DWM; and (2) in May of 2007 the Property was sold to Ansel at a sheriff's sale. *See* dkt. # 19 at 5–6. This Court accepted a Stipulation and Consent to Judgment in this action, and accordingly concluded the Trust was the alter ego and fraudulent transferee of Swanson, and therefore it had no interest in the Property. *See* dkt. # 22. The Court concluded the conveyance of the Property to the Trust was fraudulent and title to the Property was deemed to be in Swanson. The Court concluded the United States has valid liens against all property of Swanson, ordered the Property sold pursuant to 28 U.S.C. § 2001, and ordered the Clerk of Court to enter judgment in favor of the United States and against Swanson in the amount of $630,188.93 plus interest accrued for unpaid tax liabilities. The court did not determine the relative priorities of lien holders.[1]

---

1. It is not clear from the parties' briefs why they stipulated to the fact that Ansel purchased the Property at a sheriff's sale in May of 2007, and then consented to a judgment

## II

■ Ravalli County ("the County") moves the Court to join the Marchants as defendants to this action under Rule 25 Fed.R.Civ.P., or, alternatively, under Rule 19 Fed.R.Civ.P. Ansel is the only party to oppose the motion. The County represents in its brief that the Marchants are presently represented by counsel in a state court action involving the Property, and the County has contacted the Marchants' counsel who indicated they do not oppose the County's motion to make them parties to the action.

The parties present several arguments for and against joinder, but they are unnecessary to the disposition of this issue. In its complaint, the United States averred, "This action is commenced pursuant to 26 U.S.C. §§ 7401 and 7403...." Section 7403(b) of Title 26 of the United States Code says, "All persons having liens upon or claiming any interest in the property involved in such action shall be made parties thereto." Ansel does not argue that the Marchants do not hold liens against the Property. The statute requires that the Marchants "be made parties" to this action.

## III

### A.

Summary judgment is appropriate when there is no issue as to any material fact and the moving party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). The party seeking summary judgment must first demonstrate the basis for its motion by identifying those portions of the pleadings, depositions, answers to interrogatories, admissions on file, and affidavits, if any, that support the party's beliefs and demonstrate the absence of any genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). If the moving party makes this requisite showing, the burden then shifts to the party opposing summary judgment to set forth specific facts showing that there is a genuine issue for trial. *Canada v. Blain's Helicopters, Inc.*, 831 F.2d 920, 923 (9th Cir.1987).

### B.

The United States seeks summary judgment that its federal tax liens on the Property have priority over Ansel's judgment lien, and therefore any proceeds from a judicial sale of the Property should be applied to satisfy the federal tax liens first. Because the United States recorded its tax liens in June of 2005, prior to Ansel obtaining its judgment in January of 2007, the United States claims federal statutory provisions provide that the tax liens must be paid prior to any other liens. The parties' arguments are legal and do not raise genuine issues of material fact.

The United States argues that because it filed its notice of tax liens in June of 2005, and Ansel's predecessor in interest obtained its judgment lien in January of 2007, the United States filed its notice prior to the perfection of the judgment lien and therefore its liens take priority over Ansel's. Ansel disagrees that determining the priority of liens is as simple as the timing of the liens' respective perfections. Ansel insists that because Swanson transferred the Property to the Trust, his interest in the Property could not be established until a court confronted the question of whether the transfer was fraudulent and adjudicated it so. And because Ansel obtained its judgment lien prior to such an adjudication in this case, it is "too late for a determination of ... Swanson's owner-

that title to the Property was deemed to be in Swanson.

ship interest in the [P]roperty." Ansel argues that because the United States has not received a judgment that Swanson owns the Property, the United States' tax liens have not attached to it, and Ansel's judgment lien takes priority.

The United States argues that Ansel is judicially estopped from asserting this argument, because its predecessor in interest obtained the judgment lien in a case in which it successfully asserted the Trust was the alter ego and fraudulent transferee of Swanson. The United States persuasively argues that the principle of judicial estoppel applies here. In *Prime Enterprises, LLC v. Swanson, et al.*, the Court concluded that the transfer of funds to the Trust, including those used to purchase the Property, was fraudulent. *See* CV 06–21–M–DWM, dkt. # 31. This is ultimately irrelevant, however, because regardless of when title to the Property was deemed to be in Swanson, the United States recorded its tax liens before Ansel's judgment lien was perfected.

 The priority of liens under federal law is governed by the common-law principle that "first in time is first in right." *See United States v. McDermott*, 507 U.S. 447, 449, 113 S.Ct. 1526, 123 L.Ed.2d 128 (1993). Subsection 6323(a) of Title 26 of the United States Code provides that a federal tax lien is not valid against a debtor's property or a competing judgment lien creditor until notice of the lien is filed pursuant to 26 U.S.C. § 6323(f). Whether a federal tax lien or a judgment lien is first in time thus depends on whether notice of the tax lien was filed and on when the judgment lien was perfected. To be first in time a judgment lien must be perfected prior to the United States filing its notice. *United States v. New Britain*, 347 U.S. 81, 84, 74 S.Ct. 367, 98 L.Ed. 520 (1954). A judgment lien is perfected when "the identity of the lienor,

the property subject to the lien, and the amount of the lien are established." *Id.*

In *United States v. McDermott*, the Supreme Court clarified how to resolve the priority of competing state and federal liens. The United States held a federal tax lien against the McDermotts, and Zions First National Bank had a judgment lien against them it obtained in state court. The United States recorded its tax lien two months after the Bank docketed its judgment lien in state court. Both the United States and the Bank sought to execute their respective liens against property the McDermotts acquired less than two weeks after the United States recorded its lien. *McDermott*, 507 U.S. at 448–49, 113 S.Ct. 1526. The Court rejected the Bank's argument that its judgment lien was perfected when it docketed it in state court. *Id.* at 451–52, 113 S.Ct. 1526. The Court concluded the Bank's lien against the property was not perfected until the McDermott's purchased the property, because under *New Britain* perfection of a judgment lien requires that "the property subject to the lien be established." *Id.* at 452–53, 113 S.Ct. 1526.

The Court concluded that, likewise, the United States' lien could not have attached to the property until the McDermotts purchased it. *Id.* at 453, 113 S.Ct. 1526. The United States and the Bank's liens thus attached at the same instant. The Court concluded the Unites States' lien took priority under the language of 26 U.S.C. § 6323(a), "The lien ... shall not be valid as against any ... judgment lien creditor until notice ... has been filed." *Id.* The Court said, "The Bank concedes that its lien did not actually attach to the property at issue here until the McDermotts acquired rights in that property. Since that occurred after filing of the federal tax lien, the state lien was not first in time." *Id.* at 452–53, 113 S.Ct. 1526. The Court rea-

soned further that because subsection (c) of § 6323 accords special priority to certain state security interests in certain circumstances, the statute "presumes that otherwise the federal tax lien would prevail." *Id.* at 453–54, 113 S.Ct. 1526.

■ Here, Ansel's judgment lien could be perfected only when title to the Property was found to be in Swanson.[2] But regardless of when the judgment lien was perfected, the United States recorded its tax liens in June of 2005, prior to the judgment in *Prime Enterprises, LLC v. Swanson* and to the Stipulation and Judgment entered in this consolidated action. The United States is first in time and its liens take priority over Ansel's. *See In Re Crocker Nat'l Bank v. Trical Mfg. Co.*, 523 F.2d 1037, 1038 (9th Cir.1975) ("Under 26 U.S.C. § 6323(a), the tax lien has priority over the claim of a judgment lien creditor if notice of the tax lien is filed before the judgment is obtained.").

### IV

In its brief opposing the United States Motion for Summary Judgment, Ansel states, "Therefore, even though the IRS filed tax lien notices on 688 Bass Lane before Ansel's judgment lien was choate, the tax liens still have not attached to the property and the notices are of no consequence to Ansel." This statement reflects a misunderstanding of applicable law. Even if the tax liens had not attached to the property because title had not yet been deemed to be in Swanson, whenever they did attach the United States' liens would take priority because the United States recorded its liens pursuant to 26 U.S.C. § 6323(a) before Ansel's judgment lien was perfected. For the same reason, the United States' liens take priority over liens other defendants may hold.

Therefore,

IT IS HEREBY ORDERED that the United States' Motion for Summary Judgment (dkt. # 25) is GRANTED; the Clerk of Court shall enter judgment in favor of the United States and against Ansel Capital Investment, LLC;

IT IS FURTHER ORDERED that Ravalli County's Motion for Joinder of Parties (dkt. # 31) is GRANTED;

IT IS FURTHER ORDERED that within twenty (20) days of the date of this Order, any remaining Defendants shall either 1) file a Stipulation as to the priority of lien holders other than the United States and a corresponding motion to dismiss the case as settled, or 2) file appropriate motions so the Court may determine the priority of remaining lien holders.

---

2. The Stipulation and Judgment filed in this consolidated action lays this issue to rest, because it concluded 1) the conveyance of the Property to the Trust instead of Swanson was fraudulent, and 2) Title to the Property is deemed to be in Swanson. *See* dkt. # 26 at 2.