**SHIRLEY MEDICAL CLINIC, P.C., Plaintiff,**

v.

**UNITED STATES of America and Commissioner of Internal Revenue Service, Defendants.**

No. 4:06–cv–00078.

United States District Court, S.D. Iowa, Central Division.

July 10, 2006.

Kathryn S. Barnhill, Barnhill & Associates PC, West Des Moines, IA, for Plaintiff.

Stephen J. Schaeffer, U.S. Dept. of Justice, Tax Division, Washington, DC, for Defendants.

## ORDER

PRATT, Chief Judge.

Before the Court is Defendants' Motion to Dismiss (Clerk's No. 5), filed May 1, 2006. Plaintiff filed a resistance to the motion (Clerk's No. 10) and Defendants replied (Clerk's No. 11). The matter is fully submitted.

## I.  FACTUAL BACKGROUND

On February 28, 2006, Plaintiff Shirley Medical Clinic, P.C. ("SMC") filed a document entitled, "Complaint and Declaratory Judgment." Clerk's No. 1. Therein, SMC seeks declaratory judgment for:

> Defendants' wrongful levy and seizure of 1) "all right title and interest of Rhoda L. Shirley, as successor to Shirley Medical Clinic in the UCC Financing Statement recorded 7/11/2002 (# P301002)"; 2) "all right title and interest of Public Safety Group, Inc. in the judgment entered July 28, 2005 against Tom Conley, Karen Conley and the Conley Group (Polk County District Court CL81891)" and to enjoin and set aside all such seizures and all such levies as wrongful and not warranted under existing law or fact.

Compl. at 1.

SMC is a subchapter S corporation whose sole shareholder, William Shirley,

died testate on June 20, 2005. Compl. ¶ 3. SMC was administratively dissolved by the Iowa Secretary of State on August 30, 2002, and is currently engaged in the winding up of its affairs pursuant to the Iowa Code. *Id.* Rhoda Shirley, the widow of William Shirley, is the sole shareholder of Public Safety Group, Inc., d/b/a/ Conley Security Agency ("PSG"), an Iowa corporation that was administratively dissolved on August 2, 2004, and that is currently engaged in the winding up of its affairs pursuant to the Iowa Code. *Id.* ¶ 5–6.

On July 16, 1990, SMC lent $450,000.00 to PSG, and a security agreement and financing statement was executed by PSG in favor of SMC. *Id.* ¶ 11. On January 9, 1991, SMC lent an additional $25,000.00 to PSG, and another security agreement and financing statement was executed. *Id.* ¶ 12. SMC renewed its UCC filing on June 11, 2001 as part of its corporate winding up. *Id.* ¶ The financing statement covered "All accounts receivable, now existing or hereafter acquired, any insurance claims paid, due or pending, proceeds from any lawsuit due or pending, contracts for services, office equipment, automobiles, and any other property belonging to the above named debtor."

In December 1999, Tom Conley, Karen Conley,[1] and The Conley Group, sued PSG and Rhoda Shirley, claiming, amongst other things, that the Conley Group owned the counterclaims of PSG due to having purchased them in July 2002. Rhoda Shirley and PSG countersued, alleging breach of fiduciary duty. On July 28, 2005, PSG obtained a judgment against Tom and Karen Conley. As to the Conley's claim that they owned the counterclaims of PSG,

Judge Rosenberg wrote: "[T]he Court finds that the evidence shows that there was a security agreement in favor of [SMC] filed with the Iowa Secretary of State in 1990. [Documents] perfect the security interest of [SMC] pursuant to Section 554.9310, the Code of Iowa." Pl.'s Ex. 5. Since judgment was entered in the State court action, SMC alleges that the Conleys and the Conley Group have engaged in fraudulent transfers of their assets to avoid their obligation to PSG. Rhoda Shirley and PSG have filed an action in state court to set aside those allegedly fraudulent transfers. Nonetheless, SMC alleges that Tom Conley intends to purchase the judgment of PSG on March 7, 2006 in an effort to nullify Judge Rosenberg's ruling, and detrimentally harm SMC.

On January 18, 2006, the Internal Revenue Service ("IRS") sent a Notice of Seizure to Rhoda Shirley for "All right, title and interest of Rhoda L. Shirley, as successor to Shirley Medical Clinic, in the UCC Financing Statement recorded 7/11/2001 at the Secretary of State, Des Moines, Ia. The Document number of this UCC Financing Statement is P301002."[2] On January 18, 2006, the IRS sent a Notice of Seizure to PSG for "All right, title and interest of Pubic Safety Group, Inc. in the judgment against Tom Conley, Karen Conley, The Conley Group. This judgment was recorded in the Clerk of District Court for Polk County, Des Moines, IA # 81891 on July 28, 2005."

SMC avers that the only asset of PSG is the judgment it has against Tom and Karen Conley. *Id.* ¶ 35. SMC also claims

---

1. Karen and Tom Conley were former employees of PSG, according to the Complaint.

2. While Plaintiff's Complaint lists exhibit numbers for the quoted language, the Court notes that the exhibits are merely affidavits of

Rhoda Shirley and her counsel, Kathryn Barnhill. The actual Notices of Seizure claimed to be located in Exhibits 2 and 3 are not currently located anywhere in the record before the Court.

that it has an interest in PSG's judgment against the Conleys in light of its renewed financing statement filed July 11, 2001. SMC further alleges that Judge Rosenberg's statement at trial that SMC's security interest was properly perfected is "res judicata and stare decisis as to the validity of [SMC's] financing statement." *Id.* ¶ 38. Thus, SMC claims that its lien against PSG has priority over that of the IRS and that any and all assets of PSG, namely the judgment against the Conleys, belong to SMC. Accordingly, SMC concludes that the IRS's seizure of such assets is wrongful and must be remedied by reversal, sanctions, and attorney's fees as provided by statute.

## II.  MOTION TO DISMISS

In addressing a motion to dismiss under Rule 12(b)(6), this Court "is constrained by a stringent standard.... A complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove *no* set of facts in support of his claim which would entitle him to relief." *Parnes v. Gateway 2000, Inc.*, 122 F.3d 539, 545–46 (8th Cir.1997) (quoting *Fusco v. Xerox Corp.*, 676 F.2d 332, 334 (8th Cir.1982) (citation omitted) (emphasis added)). In addition, the complaint must be liberally construed in the light most favorable to the plaintiff and should not be dismissed simply because the court is doubtful that the plaintiff will be able to prove all of the necessary factual allegations. *See Parnes*, 122 F.3d at 546. Finally, when considering a motion to dismiss for failure to state a claim, a court must accept the facts alleged in the complaint as true. *See Cruz v. Beto*, 405 U.S. 319, 322, 92 S.Ct. 1079, 31 L.Ed.2d 263 (1972). The Supreme Court has articulated the test as follows:

> When a federal court reviews the sufficiency of a complaint, before the reception of any evidence either by affidavit or admissions, its task is necessarily a limited one. The issue is not whether a claimant will ultimately prevail but whether the claimant is entitled to offer evidence to support the claims. Indeed it may appear on the face of the pleadings that a recovery is very remote and unlikely but that is not the test. Moreover, it is well established that, in passing on a motion to dismiss, whether on the ground of lack of jurisdiction over the subject matter or for failure to state a cause of action, the allegations of the complaint should be construed favorably to the pleader.

*Scheuer v. Rhodes,* 416 U.S. 232, 236, 94 S.Ct. 1683, 40 L.Ed.2d 90 (1974), *overruled on other grounds by Davis v. Scherer,* 468 U.S. 183, 191, 104 S.Ct. 3012, 82 L.Ed.2d 139 (1984). A motion to dismiss should be granted "only in the unusual case in which a plaintiff includes allegations that show on the face of the complaint that there is some insuperable bar to relief." *Frey v. City of Herculaneum,* 44 F.3d 667, 671 (8th Cir.1995).

## III.  LAW AND ANALYSIS

■ Defendants argue that Plaintiff SMC has no interest in the first described asset, "all right title and interest of Rhoda L. Shirley, as successor to Shirley Medical Clinic in the UCC Financing Statement recorded 7/11/2002." The Court agrees. Rhoda Shirley is not a Plaintiff in this action and SMC has no standing to assert claims on behalf of Rhoda Shirley, an individual. Moreover, Plaintiff concedes in its resistance that "Rhoda Shirley has no interest whatsoever in the security interest of Plaintiff Shirley Medical Clinic and has never had any right title or interest in SMC or its security interest in PSG and is *not* a successor to SMC." Pl.'s Resistance Br. at 2. Thus, SMC cannot have an inter-

est in Rhoda Shirley's interest in assets when Rhoda Shirley has no such interest.

■ Regarding the second asset, "all right title and interest of Public Safety Group, Inc. in the judgment entered July 28, 2005 against Tom Conley, Karen Conley and the Conley Group," Defendants argue that Plaintiff has a superior secured interest in some assets of PSG, but does not have a security interest superior to the United States in the Conley Judgment. Def.'s Br. at 1. This, according to Defendants, is because Plaintiff's 1990 and 1991 security agreements do not describe the judgment with specificity and were not made after the claims supporting the judgment arose. *Id.*

Title 26 U.S.C. § 7426 provides:

(1) Wrongful levy,-If a levy has been made on property or property has been sold pursuant to a levy, any person (other than the person against whom is assessed the tax out of which such levy arose) who claims an interest in or lien on such property and that such property was wrongfully levied upon may bring a civil action against the United States in a district court of the United States. Such action may be brought without regard to whether such property has been surrendered to or sold by the Secretary.

Thus, anyone other than the taxpayer whom an IRS levy has aggrieved may attack the levy in federal court on the ground that the levy was wrongful. 26 U.S.C. §§ 7426(a)(1), (b)(1), & (b)(2). The Eighth Circuit has held that § 7426 "provides the only jurisdictional basis" upon which a person who is not the delinquent taxpayer may sue the IRS for wrongful levy. *Miller v. Tony and Susan Alamo Found.*, 134 F.3d 910, 916 (8th Cir.1998); *Rosenblum v. United States,* 549 F.2d 1140, 1144–45 (8th Cir.1977).

■ In a wrongful levy action, the Plaintiff bears the burden of proving: 1) it has an interest in the seized or levied property; and 2) the levy was wrongful. *Security Counselors, Inc. v. United States,* 860 F.2d 867, 869 (8th Cir.1988). A levy is wrongful when, among other things, it "will or does effectively destroy or otherwise irreparably injure someone [a third party's] interest in the property which is senior to the Federal tax lien." 26 C.F.R. § 301.7426–1(b); *see e.g., Bank of Nebraska in La Vista v. United States,* 949 F.2d 262, 264 (8th Cir.1991) (finding an IRS levy wrongful when trucks sold under a tax lien were subject to a superior lien held by a bank).

In the present case, Defendants claim that Plaintiff has failed to allege facts which would prove the second element, that is, that SMC possesses an interest superior to the United States in the judgment PSG received against the Conleys. The judgment at issue, dated August 15, 2005, entered judgment in favor of PSG on its claims against the Conleys for breach of fiduciary duty in the following amounts: $96,453.24 plus interest against Tom Conley; $16,571.54 plus interest against Karen Conley; $107,910.24 plus interest against Tom and Karen Conley, for a total of $220,935.02. The court also awarded punitive damages of $50,000 plus interest against Tom Conley; and punitive damages of $25,000 plus interest against Karen Conley. Pl.'s Ex. 5 at 29. The claims by PSG against the Conleys included misappropriation of funds; breach of fiduciary relationship; conversion of property; conspiracy; and appropriation of customer lists. *Id.* at 2.

SMC claims it has maintained a properly perfected, valid and enforceable security interest in all assets of PSG since approximately 1990. On July 11, 2001, SMC filed a renewed UCC financing statement for

"All accounts receivable, now existing or hereafter acquired; any insurance claims paid, due or pending; proceeds from any lawsuit due or pending; contracts for services; office equipment, automobiles; and any other property belonging to [Public Safety Group]." Pl.'s Ex. 4. Defendants argue that the financing statement was insufficient to perfect a security interest by SMC in the judgment against the Conleys because the judgment represents collateral from a commercial tort claim. Plaintiff counters that the judgment was not for a commercial tort claim, but rather was awarded on a claim for breach of contract between PSG and the Conleys.

"When addressing disputes involving federal tax liens, the Supreme Court has held that the questions of whether a property interest exists and the precise nature of that interest are state-law issues, but the question of priority between conflicting interests is governed by federal law." *Bremen Bank & Trust v. United States,* 131 F.3d 1259, 1263 (8th Cir.1997) (citing *Aquilino v. United States,* 363 U.S. 509, 513–14, 80 S.Ct. 1277, 4 L.Ed.2d 1365 (1960)). As a general matter, Iowa law provides that even a non-specific description of personal or real property is sufficient for purposes of describing secured property, "if it reasonably identifies what is described." Iowa Code § 554.9108(1). Reasonably identified collateral may be described by specific listing; category; type; quantity; computational or allocational formula or procedure; or any other method "if the identity of the collateral is objectively determinable." *Id.* § 554.9108(2)(a-f). A description by "type of collateral," however, under the Iowa UCC "is an insufficient description of ... a commercial tort claim." *Id.* at § 554.9108(5)(a).

The Iowa Code also provides that "after-acquired collateral," that is, collateral acquired by the debtor *after* the date any secured interest is filed, may generally be provided for in a security agreement. Iowa Code § 554.9204(1). An exception to the general rule, however, applies in cases of commercial tort claims. Iowa Code § 554.9204(2)(b) ("A security interest does not attach under a term constituting an after-acquired property clause to ... a commercial tort claim."). Thus, "[i]n order for a security interest in a tort claim to attach, the claim must be in existence when the security agreement is authenticated. In addition, the security agreement must describe the tort claim with greater specificity than simply 'all tort claims.'" *Id.* Comment 4.

At issue in the present case, then, is the following primary question: Did the damages awarded to PSG in the Conley lawsuit arise from a "commercial tort claim"? A "commercial tort claim" is defined as "a claim arising in tort with respect to which: (1) the claimant is an organization; or (2) the claimant is an individual and the claim (a) arose in the course of the claimant's business or profession; and (b) does not include damages arising out of personal injury to or the death of an individual." Iowa Code § 554.9102(m). According to the Amended and Substituted Findings of Fact, Conclusions of Law and Judgment Entry of Judge Scott Rosenberg in the action from which the disputed judgment arose, Plaintiffs therein (Tom and Karen Conley, and the Conley Group) had, at the time of trial, claims of "violations of Iowa Code Chapter 91A regarding claims for wages and vacation pay including interest, damages, court costs, attorney fees, and money due and owing from loans by the Plaintiffs ... to PSG" against the Defendants (Public Safety Group, Inc, d/b/a Conley Security Agency/PSG, Rhoda Shirley). Pl.'s Ex. 5 at 2. Defendants had the following remaining counterclaims against Plaintiffs at the time of trial: misappropriation of funds; breach of fiduciary relationship;

conversion of property; conspiracy; and appropriation of customer lists. *Id.* The Court dismissed each of Plaintiff's claims, but under the heading "Defendant's Counterclaims—Breach of Fiduciary Duty," Judge Rosenberg found:

[I]t is clear from the evidence presented that Tom and Karen Conley engaged in conduct wherein money was misappropriated from the corporation through fraudulent expense claims and the payment of salaries and wages to themselves unauthorized by PSG. The evidence clearly establishes there was a breach of fiduciary trust between Tom and Karen Conley and PSG. In determining the amount of damages proximately caused by this breach of fiduciary duty, the Court finds [damages totaling $220,935.02]....

*Id.* at 26.

■ There can be little doubt that Public Safety Group, the Counterclaim Plaintiff in the underlying state court action, was an "organization" within the definition of a commercial tort claim. Indeed, PSG was "an Iowa corporation located in Polk County, Iowa." Compl. ¶ 6. Likewise, the additional Counterclaim Plaintiff, Rhoda Shirley, was clearly an individual person whose claims against the Conleys "arose in the course of [her] business or profession," as the sole shareholder of PSG. Moreover, the claims in question did not arise out from a personal injury or death. Additionally, there is no question that the Judgment awarded to PSG was for a claim of breach of fiduciary duty, clearly a tort under Iowa law. *See Estate of Harris v. Papa John's Pizza,* 679 N.W.2d 673, 682 (Iowa 2004) (noting that breach of fiduciary duty constitutes an intentional tort under Iowa law). Thus, as a matter of law, the judgment in favor of PSG was a "commercial tort claim" as that term is defined in the Iowa statutes.

Because the judgment is a commercial tort claim, the Court now must determine whether SMC's UCC financing statement, renewed on July 11, 2001, and covering "proceeds from any lawsuit due or pending," is sufficient. The Court holds it is not. As noted above, for a description of collateral in the context of a commercial tort claim, a "description only by type . . . is . . . insufficient." Iowa Code § 554.9108(5). "Proceeds from any lawsuit due or pending" is clearly a description by type of collateral. Some additional description is necessary to cover the proceeds from the commercial tort claim: "The reference to 'only by type' . . . means that a description is sufficient if it [reasonably identifies what is described] and contains a descriptive component beyond the 'type' alone." *Id.* Comment 5. An example in Comment 5 iterates that the description need not be specific, but a description such as " 'all tort claims arising out of the explosion of debtor's factory' " would be sufficient, "even if the exact amount of the claim, the theory on which it may be based, and the identify of the tortfeasor(s) are not described." *Id.*

The example in Comment 5 is also demonstrative of what would be sufficient to subject a commercial tort claim to an after-acquired clause, since such clauses are insufficient to perfect a security interest in commercial tort claims, absent some specific description of the tort claim. § 554.9204. Again, Plaintiff's description of "any lawsuit due or pending" is insufficient to describe the judgment in favor of PSG in this case, as it lacks any specific references to the basis of any possible tort claim by PSG.

■ Plaintiff's only real argument against the granting of Defendants' Motion to Dismiss is that Defendants improperly rely on facts and circumstances outside the complaint, such as the nature of the judg-

ment held by PSG. It is well-established, however, that a district court may take judicial notice of public records, such as documents filed with the Secretary of State and judicial rulings, and consider them on a motion to dismiss. *See Faibisch v. Univ. of Minn.*, 304 F.3d 797, 802–03 (8th Cir.2002); *see also Lyons v. Stovall*, 188 F.3d 327, 333 n. 3 (" '[F]ederal courts may take judicial notice of proceedings in other courts of record' " (citation omitted)). The "facts" that Plaintiff claims it can prove to sustain its cause of action offer no assistance where, as here, all the documentary evidence is public record and the only "issue" to be determined is a legal rather than a factual one.

## IV. CONCLUSION

As Plaintiff has failed to demonstrate a security interest superior to that of the Defendants in the alleged wrongfully levied property, Defendants' Motion to Dismiss Plaintiff's Complaint for Declaratory Judgment (Clerk's No. 5) is GRANTED. Plaintiff's Motion for Preliminary Injunction and Expedited Hearing (Clerk's No. 3) is DENIED as moot.

IT IS SO ORDERED.