**In re Wayne ZYCH, Diane Zych, Debtors.**

**No. BKY 07–60334.**

United States Bankruptcy Court, D. Minnesota.

Dec. 18, 2007.

David C. McLaughlin, Fluegel Helseth McLaughlin Anderson & Br, Ortonville, MN, for Debtors.

## ORDER ON CROSS MOTIONS FOR SUMMARY JUDGMENT

DENNIS D. O'BRIEN Bankruptcy Judge.

At Fergus Falls, Minnesota.

This matter came before the Court on motion for relief from stay. David McLaughlin appeared on behalf of the debtor; James Lodoen appeared on behalf the unsecured creditors committee; and Jon Brakke appeared on behalf of the movant Rabo Agrifinance, Inc. The Court granted the motion in part, reserving determination of one subject of the motion pending supplemental briefing by the parties.

The issues regarding the settlement proceeds having been thoroughly addressed by the parties in post-hearing briefs, the

Court took the matter under advisement.[1] Being now fully advised, the Court makes this Order pursuant to the Federal and Local Rules of Bankruptcy Procedure.

## I. FINDINGS OF FACT

The facts underlying this controversy are not in dispute. GFI America, Inc., and its subsidiary Nicollet Cattle Trading, were licensed and bonded dealers and market agencies under the Packers and Stockyards Act, 7 U.S.C. § 181. Wayne Zych sold 217 head of cattle through Nicollet on April 25, 2005, for $221,811.09, after adjustments.

Rabo Agrifinance, as Zych's lender, was secured in the cattle pursuant to an agricultural security agreement executed on March 24, 2005 and filed on April 4, 2005. The financing statement lists the following collateral: *Farm products, Accounts, Goods, Inventory, Chattel paper, General intangibles, Contract rights, Documents, Instruments, Proceeds, government program payments, crop insurance payments and indemnities, Equipment and Fixtures, Livestock and its Progeny.* Under the terms of the security agreement, the laws of the State of Iowa are to govern.

Payment by GFI for the cattle was returned for insufficient funds. GFI ultimately filed for relief in bankruptcy under Chapter 11. Wachovia Capital Finance Corporation, GFI's lender, commenced an adversary proceeding against GFI.

Zych filed a counterclaim against Wachovia in that matter alleging, in sum, that the P & S Act requires market agencies to segregate brokered cattle proceeds in a custodial account; that in October 2003, because the GFI loan had become a prob-

lem, Wachovia began, in violation of the P & S Act, to include brokered cattle proceeds as if they were GFI's accounts receivable eligible to collateralize Wachovia's loan; and that Wachovia permitted GFI to receive loan advances in reliance upon the illegal pledge of brokered cattle proceeds (in excess of an approximate commission of $3 per live head). In April 2005, Nicollet intended to leave GFI, eliminating Wachovia's access to Nicollet's brokered cattle proceeds to collateralize the GFI loan. In response, according to Zych, Wachovia declared a non-monetary default and swept GFI's account containing $2,800,000 in brokered cattle proceeds, including Zych's proceeds.

GFI, Wachovia and the cattlemen mediated the adversary proceeding. The resulting settlement was approved and became final on April 4, 2007. Under the terms of the settlement, the cattlemen received an immediate distribution of 51% of individual claims and preserved the remainder of the claim against the bankruptcy estate (less $100,000.00), and the cattlemen also preserved claims against third parties.

On April 6, 2007, Fluegel, Helseth, McLaughlin, Anderson & Brutlag, Chartered, the attorneys of record for Zych in the above described action, filed a UCC financing statement declaring their lien on the following collateral: *Judgment, settlement, and any proceeds from the commercial tort claim of Wayne R. Zych against GFI America, Inc. Including settlement proceeds as approved by order of the court on April 4, 2007 in Case No.: 05–47855(NCD), United States Bankruptcy Court for the District of Minnesota Fourth Division.* Zych had previously executed a

---

**1.** The issues determined here are also pleaded in *Rabo Agrifinance, Inc. vs. Fluegel, Helseth McLaughlin, Anderson & Brutlag, Chtd., and Wayne Zych, Diane Zych and Dale Zych,* ADV 07–6035. However, the issues in the instant

motion for relief from stay are related, and accordingly this matter will be treated as a motion for summary judgment with respect to claims to the settlement funds.

retainer agreement with FHMAB relating to the claim against Wachovia and others, and executed a closing disbursement sheet authorizing the law firm to accept $42,831.88 attorney fees.[2]

The parties to the controversy presently before the Court do not dispute that Zych's claim for conversion against Wachovia and GFI was a commercial tort claim within the meaning of § 9–102(13) of UCC Revised Article 9. Zych asserts that as a commercial tort claim, Rabo lacks a security interest in the settlement proceeds for the failure of its security agreement to include commercial tort claims with any sufficiency. Rabo contends that the proceeds from settlement of the commercial tort claim are secured as proceeds of Rabo's original collateral, the cattle, and are otherwise subject to Rabo's security agreement as a general intangible.

## II. DISCUSSION

 Under both Iowa and Minnesota's Uniform Commercial Codes,[3] a description of collateral by type alone is insufficient when the collateral at issue is a commercial tort claim. The relevant provision provides, in pertinent part:

336.9–108. Sufficiency of description

(a) Sufficiency of description. Except as otherwise provided in subsections (c), (d), and (e), a description of personal or real property is sufficient, whether or not it is specific, if it reasonably identifies what is described.

(b) Examples of reasonable identification. Except as otherwise provided in subsection (d), a description of collateral reasonably identifies the collateral if it identifies the collateral by:

(1) specific listing;

(2) category;

(3) except as otherwise provided in subsection (e), a type of collateral defined in the Uniform Commercial Code;

(e) When description by type insufficient. A description only by type of collateral defined in the Uniform Commercial Code is an insufficient description of:

(1) a commercial tort claim.

*See* Minn.Stat. § 336.9–108 (2001), see also Iowa Code § 554.9108.

"Significantly, Article 9 of the U.C.C. has requirements regarding the sufficiency of descriptions for commercial tort claims." *See In re Sarah Michaels, Inc.,* 358 B.R. 366, 377–378 (Bankr.N.D.Ill.2007), citing 810 Ill. Comp. Stat. 5/9–108 cmt. 5(d). "In particular, 810 Ill. Comp. Stat. 5/9–108(e)(1) provides that 'a description only by type of collateral defined in the Uniform Commercial Code is an insufficient description of ... a commercial tort claim.' " *Sarah Michaels,* 358 B.R. at 378. "The commentators to revised Article 9 predicted the pitfall ... [of] failure to list the" interest adequately. *Id.,* citing 810 Ill. Comp. Stat. 5/9–102 (42) cmt. 5 (explaining that an important consequence to

---

**2.** Fluegel, Helseth, McLaughlin, Anderson & Brutlag, Chartered assigned its attorney lien to the bankruptcy estate for the benefit of the unsecured creditors in recognition of the likelihood that the perfection of the attorney's lien would constitute an avoidable preference, and in light of the requirement of disinterestedness as Zych's counsel in this Chapter 11 case.

**3.** The Court herein cites to applicable provisions of Minnesota's Uniform Commercial Code as relied upon by movant, Rabo Agrifinance, and because no party has raised a material distinction between the Iowa and Minnesota codes in any event.

the creation of a separate category for commercial tort claims is the adequacy of the description in the security agreement).

In this case, Rabo's security agreement does not identify a commercial tort claim at all, not by bare type, and obviously not with any additional detailed description. Moreover, there is precedent to suggest that the heightened identification requirement applicable to commercial tort claims survives disposition of the claim and extends to proceeds of a commercial tort claim.

"A description by 'type of collateral' ... under the Iowa UCC 'is an insufficient description of ... a commercial tort claim.'" *See Shirley Medical Clinic, P.C. v. U.S.*, 446 F.Supp.2d 1028, 1033 (S.D.Iowa 2006), citing Iowa Code § 554.9108(5)(a). In *Shirley Medical*, the pertinent security agreement provision was "proceeds from any lawsuit due or pending." *Id.* at 1034. The court found that language to be inadequate for purposes of satisfying the heightened identification requirements applicable to commercial tort claims under the UCC:

> As noted above, for a description of collateral in the context of a commercial tort claim, a "description only by type ... is ... insufficient." Iowa Code § 554.9108(5). "Proceeds from any lawsuit due or pending" is clearly a description by type of collateral. Some additional description is necessary to cover *the proceeds from the commercial tort claim:* "The reference to 'only by type' ... means that a description is sufficient if it [reasonably identifies what is described] and contains a descriptive component beyond the 'type' alone." *Id.* Comment 5. An example in Comment 5 iterates that the description need not be specific, but a description such as " 'all tort claims arising out of the explosion of debtor's factory' " would be sufficient,

"even if the exact amount of the claim, the theory on which it may be based, and the identify of the tortfeasor(s) are not described." *Id.* The example in Comment 5 is also demonstrative of what would be sufficient to subject a commercial tort claim to an after-acquired clause, since such clauses are insufficient to perfect a security interest in commercial tort claims, absent some specific description of the tort claim. § 554.9204.

*Shirley Medical*, 446 F.Supp.2d at 1034 (emphasis added). The subject of the controversy in *Shirley Medical* was a commercial tort claim after judgment had been reached, and the court required that the collateral description meet the greater specificity required for commercial tort claims. See also *In re Franklin Indus. Complex, Inc.*, 377 B.R. 32, 51 (Bankr. N.D.N.Y.2007) (the words "all tort claims" in a security agreement are insufficiently specific to effect attachment of a commercial tort claim).

■ Moreover, the *Shirley Medical* court noted that a commercial tort claim purportedly the subject of a security agreement must arise in advance of the perfection of that security agreement. The court explained:

> The Iowa Code also provides that "after-acquired collateral," that is, collateral acquired by the debtor after the date any secured interest is filed, may generally be provided for in a security agreement. Iowa Code § 554.9204(1). An exception to the general rule, however, applies in cases of commercial tort claims. Iowa Code § 554.9204(2)(b) ("A security interest does not attach under a term constituting an after-acquired property clause to ... a commercial tort claim."). Thus, *"[i]n order for a security interest in a tort claim to attach, the claim must be in existence when the*

*security agreement is authenticated.* In addition, the security agreement must describe the tort claim with greater specificity than simply 'all tort claims.'"
*Id.* Comment 4.

*Shirley Medical,* 446 F.Supp.2d at 1033 (emphasis added); see also Minn.Stat. § 336.9–204 (2001). "Under Section 9–204, an after-acquired collateral clause in a security agreement will not reach future commercial tort claims. It follows that when an effective security agreement covering a commercial tort claim is entered into the claim already will exist." *See* Minn.Stat. § 336.9–108 (2001) Comment 5; see also *In re Yelverton,* 2007 WL 841393, *2 (Bankr.M.D.Ala.2007).

Without an adequate description of a potential commercial tort claim in a security agreement, there is little room, if any, to fit such a claim into an insufficiently descriptive pre-existing security agreement after the fact.

Rabo's security agreement does provide for "proceeds" and "general intangibles," and Rabo asserts a perfected security interest therein to contend that it is nevertheless secured in the settlement proceeds of the commercial tort claim. This is a tempting path to follow, but it is misguided. While there is no doubt that the cattle constituted Rabo's collateral, and certainly the cattle are the factual cause underlying Zych's commercial tort claim for conversion, the UCC treats commercial tort claims distinct from the proceeds and general intangibles provisions upon which Rabo relies.

UCC Article 9 is carefully self-limiting, but particularly excepts commercial tort claims from the inapplicability exclusion. Section 336.9–109 provides, in pertinent part:

> (d) Inapplicability of article. This article does not apply to:
>
> (12) an assignment of a claim arising in tort, other than a commercial tort claim, but sections 336.9–315[4] and 336.9–322[5] apply with respect to proceeds and priorities in proceeds;

*See* Minn.Stat. § 336.9–109 (2001); see also Iowa Code § 554.9109 (2002).

Rabo seems to claim that § 336.9–109(d)(12) provides that §§ 336.9–315 and 336.9–322 apply with respect to commercial tort claims. However, the language is crafted such that the disjunctive "but" relates to the general phrase "an assignment of a claim arising in tort," not with respect to commercial tort claims. The provision already made the article applicable to commercial tort claims before the disjunctive was employed, and commercial tort claims are specifically governed separately under different provisions of the UCC, as heretofore described. The comment regarding application of Article 9 to commercial tort claims provides, in relevant part:

> Tort Claims. Subsection (d)(12) narrows somewhat the broad exclusion of transfers of tort claims under former Section 9–104(k). *This Article now ap-*

---

**4.** Minn.Stat. § 336.9–315 provides, in part: (a) Disposition of collateral: continuation of security interest or agricultural lien; proceeds. Except as otherwise provided in this article . . .:(1) a security interest or agricultural lien continues in collateral notwithstanding sale, lease, license, exchange, or other disposition thereof unless the secured party authorized the disposition free of the security interest or agricultural lien; and (2) a security interest attaches to any identifiable proceeds of collateral. (c) Perfection of security interest in proceeds. A security interest in proceeds is a perfected security interest if the security interest in the original collateral was perfected. *See also* Iowa Code § 554.9315.

**5.** Minn.Stat. § 336.9–322 addresses priorities among conflicting security interests in and agricultural liens on the same collateral. *See also* Iowa Code § 554.9322.

plies to assignments of *"commercial tort claims" (defined in Section 9–102) as well as to security interests in tort claims that constitute proceeds of other collateral* (e.g., a right to payment for negligent destruction of the debtor's inventory). Note that once a claim arising in tort has been settled and reduced to a contractual obligation to pay, the right to payment becomes a payment intangible and ceases to be a claim arising in tort. This Article contains two special rules governing creation of a security interest in tort claims. First, a description of collateral in a security agreement as "all tort claims" is insufficient to meet the requirement for attachment. See Section 9–108(e). Second, no security interest attaches under an after-acquired property clause to a tort claim. See Section 9–204(b).

*See* Minn.Stat. § 336.9–109, Comment 15 (emphasis added).

The Court appreciates Rabo's attempt to characterize § 336.9–109 in such a way that it might breathe life into legitimate collateral related to a commercial tort claim, but there is no ambiguity within these provisions, and to conclude otherwise would allow Rabo to entirely circumvent the patent requirements of § 336.9–108 and § 336.9–204. Were there any confusion, comment 15 is highly instructive and provides additional clarity. The Court finds that the article applies to commercial tort claims and the article applies to security interests in tort claims that constitute proceeds of other collateral, but that commercial tort claims and their proceeds are also governed by the UCC provisions specific to commercial tort claims.

Rabo relies upon the Ninth Circuit's *In re Pacific/West Communications Group, Inc.*, 301 F.3d 1150 (9th Cir.2002). In that case, the issue was whether a creditor's security interest in a debtor's general intangibles and all proceeds thereof would attach to the proceeds of a commercial tort claim. The court applied the previous version of the UCC in effect at the time, which provided a general tort claim exclusion, and not the current, amended UCC which extends Article 9 coverage to security interests in commercial tort claims. The court noted that "[i]t is clear that a party ∴.. can now attach its security interest to tort proceeds." *Id.* at 1155. "Commentators who opposed the broad exclusion of § 9104(k) have been vindicated." *Id.* "But we examine the law as it was when the creditor sought to attach its security interest, rather than what it is now, or what it should have been." *Id.* The result in *Pacific/West* is not the conclusion of a review of current applicable law. Moreover, the court there did not examine UCC § 9–108 or § 9–204. The analysis is perhaps incomplete and the dicta not persuasive.

The Ninth Circuit BAP arrived at the same conclusion as *Pacific/West* in *In re Wiersma*, 324 B.R. 92 (9th Cir.BAP2005),[6] also without discussion of §§ 9–108 or 9–204. *Wiersma* does not consider the significance of the more-than-type description required for identifying a security interest in a commercial tort claim, and does not address the requirement that a security agreement covering a commercial tort claim must be authenticated in advance of the genesis of the claim.

Instead, the *Wiersma* court relied upon the UCC provisions regarding general in-

---

**6.** This opinion was subsequently reversed in part by *In re Wiersma*, 483 F.3d 933 (9th Cir.2007) on the basis that the BAP did not have jurisdiction to consider the secured sta-

tus issue on appeal, but the BAP's opinion was affirming the bankruptcy court, and the decision is widely cited in any event.

tangibles and an interpretation of § 9–109 squarely at odds with the determination being made here. "[R]evised Article 9 considers payment intangibles of either consumer or commercial tort actions to be general intangibles. Once the payment intangible comes into existence, in this case as an after-acquired settlement fund general intangible, it is automatically within the scope of Article 9 as part of the secured creditor's collateral." *Wiersma*, 324 B.R. at 107.

 Observing a fundamental difference in rationale, this Court holds that Rabo is precluded from claiming a security interest in the proceeds of Zych's commercial tort claim because Rabo's security agreement did not identify any such collateral by detailed "type" description or otherwise, and because the claim arose after the effective date of Rabo's security agreement. The Court cannot reconcile Rabo's premises, though not unsupported by some authority, with the UCC's clear directives aimed at limiting a creditor's access to commercial tort claims and proceeds therefrom.[7]

Having determined the matter on this basis and concluded that Rabo Agrifinance is not secured in the proceeds of the settlement between Zych and Wachovia, the Court need not address the remaining issues.[8]

## III. DISPOSITION

IT IS HEREBY ORDERED:

1. The motion for relief from stay is DENIED with regard to $120,393.00 settlement proceeds (from claims against GFI America and Wachovia Financial related to the sale of cattle) presently held in debtor counsel's trust account;

2. The motion for summary judgment by Rabo Agrifinance, Inc. is DENIED;

3. The motion for summary judgment by the debtor is GRANTED; and

4. Rabo Agrifinance, Inc. does not hold a secured or other interest in the settlement proceeds of $120,393.00 above described.

LET JUDGMENT BE ENTERED ACCORDINGLY.

---

**7.** The same analysis applies against Rabo's claim that it is secured in the settlement proceeds because the funds constitute a general/payment intangible under Minn.Stat. § 336.9–102(a)(61) and § 336.9–109, Comment 15 (once a claim arising in tort has been settled and reduced to a contractual obligation to pay, the right to payment becomes a payment intangible). The UCC provisions governing commercial tort claims in particular, including Minn.Stat. §§ 336.9–108 and 336.9–204, as well § 336.9–109(d)(12), must be observed to in order to avoid rendering the provisions meaningless. See also *In re Sarah Michaels, Inc.*, 358 B.R. 366, 379–380 (Bankr. N.D.Ill.2007).

**8.** With respect to Rabo's argument under the Food Security Act, assuming that 7 U.S.C. § 1631(e)(3) provides that GFI acquired Zych's cattle subject to Rabo's security interest, and also assuming that the security interest then attached to the proceeds of GFI's secondary sale of the cattle to National Beef, Rabo may therefore have an FSA claim against GFI, but that does not undermine the UCC provisions controlling security in commercial tort claim proceeds and render Rabo secured in the proceeds of Zych's commercial tort claim against GFI and Wachovia.